## NEW YORK CIRCUIT.
### MAY 8, 1845.
### Before EDMONDS, Circuit Judge.

### SAMUEL INGALLS v. JOHN BROOKS, JR.

The owners of a freight and transportation line of steamboats, which forms part of a continuous line between distant places, but which is independent of, and not connected, in losses or profits, with other parts of the line, are liable, as common carriers, to the extent of their part of the line, and thenceforth as forwarders.

Their duty, as forwarders, is to send forward at the earliest period, and by the must accustomed and safe mode of conveyance, unless specially direct. ed as to the mode of forwarding.

If they forward in a manner different from that directed, though in the most usual manner, and the goods are lost, they are liable for their value.

CASE against defendants, as common carriers, tried at the New York Circuit, May 8, 1845.

Plaintiffs were manufacturers at North Adams, Mass., and on the 25th of February, 1843, they consigned five cases of satinets to "Tiffany, Ward & Co., Baltimore," marked "Railroad line." The cases were left by them at the railroad depot, Pittsfield, whence they were transported, by the Western Railroad Company to the junction with the Housatonic Railroad Company, by whom they were transported to Bridgeport, and there put on board the steamboat Nimrod, belonging to the defendants, which was a regular packet boat between Bridgeport and New York.

On their arrival at New York, the agent of the defendants delivered the goods to one Ward, a cartman of the firm of Lawrence & Trimble, merchants in New York, who were the general agents of Tiffany, Ward & Co., in New York, without any particular instructions, but in pursuance of a general practice which had prevailed, with the agents of the boat, of delivering to that cartman all the goods they brought to New York for either Lawrence & Trimble, or Tiffany, Ward & Co.

The cartman delivered the goods on board the schooner

Two Pollys, bound for Baltimore. He gave to the agent of the Nimrod a receipt for the goods, in the name of Lawrence & Trimble, and took from the owner of the Two Pollys a bill of lading in their name. The Two Pollys was lost at sea, with the goods.

Evidence was given on the trial to show what was the customary mode of forwarding goods when marked as these were —"Railroad line"—some understanding it to mean, by railroad as far as there was such a mode of transportation from the place of departure, to the place of destination, of the goods; and others, that this direction was obeyed when a railroad had been used in any part of the route. It appeared that at that season of the year the transportation of goods was by wagons from North Adams to Pittsfield; by railroad from Pittsfield to Bridgeport; by steamboat from Bridgeport to New York, and from New York to Baltimore by railroad, through Philadelphia, or by packets by sea.

*J. L. White*, for defendants, insisted that the goods, being consigned to Baltimore, the duty of the defendants was, on their arrival in New York, to forward them from that port by the usual conveyance, and that the delivery of them, by a cartman, or otherwise, to the master of another vessel, bound for Baltimore, was sufficient; that the defendants, being carriers only to New York, it was not expected of them to deliver to the consignees, but to forward them, and, therefore, they were excused for non-delivery to them, and were permitted to deliver to another carrier, and that, as forwarders, they were liable only for want of proper care.

*S. Sherwood*, for plaintiff.

*The Circuit Judge* charged the jury that the undertaking of the defendants was that of common carriers, from Bridgeport to New York, and that of forwarders at New York.

That unless some particular directions had been given them to forward the goods in some designated mode, it would be

14—vol. 1

enough for them to forward them by the usual mode of conveyance from New York to Baltimore. The first question, therefore, was whether any such directions had been given in this case. On the one hand it was claimed that the mark on the goods, "by railroad line," was such direction as plainly indicated an intention that the goods should be forwarded by railroad, so far as such a mode of transportation was practicable between North Adams and Baltimore. On the other hand, it was insisted that such direction was not necessarily to be understood from the mark, but that the intention of the mark was fully answered by the use of the railroad at the beginning of the route, that is, from Pittsfield to Bridgeport. To support such claim, evidence had been given in regard to the customary understanding of those words. It was proper for the jury to take that evidence into consideration, and if, from that, they were satisfied that those' words had, in the trade, obtained a general and well understood meaning like that, they would be at liberty to regard it as entering into and forming a part of the contract between the parties, and governing its construction and execution.

The liability of the defendants continued so long as the goods were in their possession, and they had to perform any farther duty in regard to them; and they must take care, at their peril, that they were delivered to the right person; and, under the foregoing considerations, the jury were instructed to inquire whether such a delivery had been secured in this case.

Verdict for plaintiffs.