WILLIAM CLAFLIN & another *vs.* THE BOSTON AND LOWELL RAILROAD COMPANY.

If, in pursuance of an executory contract of sale, the owners of merchandise send a quantity of it to the place named for the delivery, and notify the purchaser thereof, and furnish him with an order entitling him to obtain it of the carrier, and receive pay therefor, this is sufficient to vest the title in the purchaser.

Misdelivery by a carrier of an article intrusted to him to be carried is a conversion.

If dutiable goods, which are sent into the United States from Canada, are marked to the care of another person than the consignee, in order that such person may pay the duties, under an arrangement by which such goods come in bond, this gives to the agent no authority to change their destination; and a carrier, who, knowing the limited authority thus conferred upon the agent, upon his order delivers them to persons not entitled to receive them, is liable for a conversion.

TORT for the conversion of fifty-one puncheons of gas tar, or dead oil.

At the trial in the superior court, before *Lord,* J., the plaintiffs, who were partners under the firm of the Newton Oil Company, in order to show title, introduced in evidence a broker's sale note, as follows:

" Sold on account of W. L. Rose & Co. to the Newton Oil Co., of Boston, Mass., from eight to ten thousand gallons (more or less) dead oil, as per sample, at seven cents per gallon, packages included, delivered in Boston. Terms, cash in ten days after delivery. George Tehern, Broker, 154 Water St., N. Y New York, Oct. 21, 1862."

Indorsed, "Accepted, W. L. Rose & Co."

Subsequently the plaintiffs received from said W. L. Rose & Co. the following papers :

" The Champlain & St. Lawrence Railroad will please receive from James B. Cowan in good order, and forward in like good order and condition to Messrs. W. L. Rose & Co., of Boston, the within packages marked and numbered W. L. R. & Co., as per margin. Thirty-one pun. gas tar.

" Received the above thirty-one packages in good order. Wm. Duncan. Montreal, 12 Nov. 1862."

On the back of said paper was written, " Deliver the within to the order of Mr. J P. Bridge. W. L. Rose & Co."

The plaintiffs also introduced in evidence a similar paper dated Montreal, November 4, 1862, indorsed in the same manner, for twenty puncheons. Bridge was one of the plaintiffs and was their agent.

The plaintiffs also offered in evidence two other papers headed thus: "Merchandise transported by Trustees First Mortgage Bonds, Vermont Central Railroad Co., from West Alburgh to Boston," dated respectively, November 12th and November 18th 1862, for thirty-one and twenty puncheons respectively, the former consigned to W. L. Rose & Co., and the latter to W. L. Rose & Co., care of A. Cushman. A draft of W. L. Rose & Co., on account of the dead oil, drawn at the same time that the other paper was sent by W. L. Rose & Co. to the plaintiffs, was paid by the latter.

It appeared that whenever dutiable freight came from Canada over the line of roads of which the defendants' road was a portion, an arrangement was made by which it came in bond, and those transmitting it made arrangements with Albert Cushman to see that the duties were paid at the custom-house, and it was the practice of the road to deliver such freight only to the order of said Cushman, the same being sometimes directed to the care of said Cushman, and sometimes not, and being distinguished from other freight by being marked upon the way bills "in bond."

The merchandise which is the subject of this suit was demanded of the defendants, but the evidence was conflicting whether such demand was made before or after the delivery as hereafter stated. There was evidence tending to show that Samuel Page & Sons purchased and received delivery of it of the said James B. Cowan, at Montreal, before October 21st 1862, and the defendants delivered the oil to him, upon the order of said Cushman. There was no such firm as W. L. Rose & Co. in Boston, and the evidence tended to show that the defendants and Cushman endeavored to find such parties unsuccessfully, and, as Messrs. Page & Sons had received similar freight and were expecting more, Cushman concluded that the property belonged to them, and ordered it to be delivered to them,

and it was so delivered. Cushman was agent of the Vermont Central Railroad Company, having general agency of freight through the continuous line of roads ; and he testified that his duties as to goods in bond had no connection with his agency, and that the same duty is now performed by one who has no connection with the road.

The case was submitted to the jury with instructions, which were not objected to, that, if the oil had been sold and delivered to Messrs. Page & Sons in Montreal, the verdict should be for the defendants ; but if not, that the jury would be authorized to find for the plaintiffs ; and the values of the two different parcels were found separately.

The defendants claimed that upon the papers introduced in evidence there was no such delivery to or title in the plaintiffs as to authorize them to maintain an action against the defendants ; and if there were such title, a delivery to the order of Cushman was a defence to the claim for both parcels, or if not for both parcels, at least for that lot which came addressed to the care of said Cushman ; but the judge ruled otherwise. Page & Sons paid the duties and freight, but the plaintiffs were ready to pay the same upon delivery of the property to them.

The jury returned a verdict for the plaintiffs ; and the case was reported for the determination of this court.

*J. G. Abbott & B. Dean*, for the defendants. The sale note vested no title in the plaintiffs. It does not appear that the property was then in existence. The quantity was not determined. The delivery was a prerequisite. Clearly the property was at the seller's risk, till delivered in Boston. Something further remained to be done, and the rule is well established that no title would pass. *Macomber* v. *Parker*, 13 Pick. 183. *Riddle* v. *Varnum*, 20 Pick. 280. The indorsement of the railroad receipts passed no title in the property. These receipts are unlike marine bills of lading.

But if the title did vest in the plaintiffs, the defendants are not liable. The article being dutiable, it was necessary that somebody should pay the duties or give bond. It was bonded at the line by the railroad company, according to the usage It

is immaterial whether the consignors knew of this usage or not. They left this to be done by the company, and cannot disavow this act while availing themselves of the carriage. Under the arrangement with Cushman, he was the only person who could pay the duties, and he was the only person entitled to receive the property from the defendants. Supposing Cushman had taken the oil himself; could anybody have complained? This would have been a delivery to the very person designated in the contract under which one parcel was sent; and as to the other parcel, the result should be the same.

*G. O. Shattuck,* for the plaintiffs. The facts proved justified the ruling that the plaintiffs had a sufficient title to enable them to maintain this action. Addison on Con. (2d ed.) 225. *Riddle* v. *Varnum,* 20 Pick. 280. *Blanchard* v. *Page,* 8 Gray, 289. *Lee* v. *Kilburn,* 3 Gray, 594. *Bloxam* v. *Sanders,* 4 B. & C. 948. The indorsement of the railroad receipt was a sufficient delivery, if delivery was necessary. *Gibson* v. *Stevens,* 8 How. (U. S.) 384. *Gardner* v. *Howland,* 2 Pick. 599. *Tuxworth* v. *Moore,* 9 Pick. 347. *Carter* v. *Willard,* 19 Pick. 1. *Pratt* v. *Parkman,* 24 Pick. 42, 46. *Davis* v. *Bradley,* 24 Verm. 55, 62. Upon the facts shown, Cushman's order is no excuse for the misdelivery.

HOAR, J. 1. The first objection made to the plaintiffs' recovery is, that the property in the oil never vested in them. The evidence showed that the plaintiffs agreed to buy a quantity of oil, not precisely determined, but within certain limits, at a price fixed, to be delivered in Boston; and the owners of the oil agreed to sell it to them. The specific quantity not being settled, nor the oil itself separated and distinguished, this did not constitute a complete sale, but only a contract to sell. But in pursuance of this contract the owners of the oil sent a quantity by railroad to Boston, consigned to themselves, a part of it being also directed to the care of A. Cushman. They notified the plaintiffs that they had sent it, and gave an order for its delivery to the order of one of them, and the plaintiffs paid for it. There was thus an agreement of the parties that this oil should be the property of the plaintiffs; it was sent to the place at which, by the contract, it was to be delivered; and the order

Claflin & another *v.* Boston and Lowell Railroad Company.

upon the freight bill entitled the plaintiffs to the possession. Nothing more was to be done by the vendors. They had made the delivery which the contract required; and we can have no doubt that it completed the sale, and vested the property in the vendees.

2. If the defendants delivered the oil to a person who had no right to receive it, and thus put it out of their power to deliver it to the consignee or owner, this was in itself a conversion, and the plaintiffs can maintain an action to recover its value. *Devereux* v. *Barclay*, 2 B. & Ald. 704.

3. The marking of the oil to the care of A. Cushman, and the custom to deliver goods thus marked only to his order, did not justify the defendants in delivering the oil to a person who was not the owner or consignee, although Cushman ordered it to be done. The evidence showed that goods were marked to his care in order that he might attend to the payment of duties, and not allow them to be delivered until the duties were paid; and it did not show that he had any general charge or consignment of the goods, such as to authorize him to dispose of them or change their destination. The oil was sent to the consignees, "to the care" of Cushman, only that Cushman might see to the discharge of the custom-house requirements, and permit the delivery when these should be complied with; and it appears that this limited authority was known to the defendants, both from the nature of his employment and from their own action in the premises. The defendants, as well as Cushman, endeavored to find the consignees; and the oil was delivered to Page & Sons from the mistaken supposition that they owned it, and not from any idea that Cushman had any discretion to exercise in regard to its disposal. There must therefore be

*Judgment on the verdict.*