CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. C. & A. POTTS & CO.

[No. 4,515. Filed July 1, 1904. Rehearing denied October 28, 1904.]

CARRIERS.—*Delay in Shipment.—Shipping Receipt.—Bill of Lading.—Complaint.*—A complaint against a carrier for failure to deliver goods in accordance with the directions in the shipping receipt is not demurrable on the ground that all preceding negotiations were merged in the

bill of lading, which provided for the delivery of the goods at a different place, where the complaint alleged that the bill of lading did not come into the possession of the plaintiff until after the time of the delivery of the goods. *pp. 572, 573.*

CARRIER.—*Delivery of Goods at Wrong Place.—Conversion.—Abrogation of Contract.*—Delivery of goods at the wrong place constitutes a conversion of the property by the carrier, and deprives the carrier of the benefit of limitations of liability in the contract of shipment. *p. 573.*

SAME.—*Failure to Deliver Goods.—Action by Consignor.*—A complaint against a carrier for failure to deliver machinery in accordance with the contract of shipment, alleging that the machinery at the time of shipment was, "and always has been the property of the plaintiff," sufficiently shows that the right of action was in plaintiff. *p. 574.*

SAME.—*Connecting Lines.—Discretion of Carrier.—Contract of Shipment.*—A provision in a bill of lading that the carrier should transport the goods to their destination if on the carrier's road, or otherwise to a place on its road where the same was to be delivered to "any connecting carrier," left no discretion to the carrier as to the place of delivery, where the place of delivery was specified in the shipping contract. *p. 574.*

SAME.—*Bill of Lading.—Reference to in Shipping Contract.*—A provision in a shipping contract that goods were to be shipped "as per conditions in company's bill of lading" is not binding on the shipper, where such provision was not read by the shipper, and was inserted in the bill of lading without his knowledge or consent.' *pp. 575, 576.*

SAME.—*Failure to Deliver Goods.—Evidence.—Harmless Error.*—In an action against a carrier for failure to deliver a shipment of goods, the defendant on motion of plaintiff was required to produce for inspection certain communications containing representations made by defendant to plaintiff in reference to tracing the goods. *Held,* that the defendant was not harmed by the ruling. *pp. 576, 577.*

SAME.—*Failure to Deliver Goods.—Evidence.*—No error was committed in refusing to admit in evidence the bill of lading, in the trial of an action against a carrier for failure to deliver goods shipped, where it was shown by the evidence that no bill of lading other than the shipping receipt was ever issued to the shippers or accepted by them. *pp. 577, 578.*

SAME.—*Failure to Deliver Goods.—Communications Between Attorneys for Parties.—Evidence.*—Communications that passed between the parties through their attorneys, constituting one of the shippers the agent of the carrier to go to a city where goods were to have been shipped and make settlement with the consignee for the carrier for damages claimed for failure to deliver the goods, were properly admitted in evidence in an action by the shipper against the carrier for failure to deliver goods shipped. *pp. 579, 580.*

SAME.—*Failure to Deliver Goods.—Trial.—Instructions.*—Instructions, in an action against a carrier for failure to deliver goods, to the effect that a bill of lading, written, and not read or accepted or assented to, and

consigned to a place different from that designated by the shipper, is binding upon the consignor, were properly refused.  *pp. 580–583.*

From Superior Court of Marion County (43,902); *Vinson Carter*, Judge.

Action by C. & A. Potts & Co. against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals.  *Affirmed.*

*B. K. Elliott, W. F. Elliott, F. L. Littleton* and *J. T. Dye*, for appellant.

*Charles Martindale*, for appellee.

COMSTOCK, J.—This action was tried on the plaintiff's amended and substituted complaint, which was in two paragraphs. The first paragraph alleges that the appellant is a common carrier, with a line extending from Indianapolis, Indiana, to Cincinnati, Ohio; that the appellee is a corporation; that just prior to April 17, 1891, the appellee sold and agreed to deliver to the Gates City Brick Company, at Gates City, Virginia, a car load of brick machinery, to be delivered by the appellant to the Gates City Brick Company, at Gates City, Virginia, within a reasonable time; that at the time the said machinery was delivered to the appellant the appellant gave the appellee the following receipt: "Indianapolis, 4-17, 1891. Received in good order, from C. & A. Potts & Co., at the depot of the Big Four railroad, the articles named below to be delivered in like good order, without delay, to the Gates City Brick Company, at the station at Gates City, Virginia, as per conditions in company's bill of lading.

"Marks.            Article.            Weight.
"1 Car load brick mach.
"No. 6165 C. C. C. & St. L.
"Signed by                    "W. A. Sullivan.
                                      "Original."

The paragraph, after setting out the foregoing instrument, contains averments to the effect that the bill of lading referred to in said receipt did not come into plaintiff's hands until long after it had made numerous inquiries relative to said shipment, but was retained by appellant until July, 1891, when it came into appellee's possession, attached to numerous "tracing papers;" that a copy thereof is attached to the complaint, the original being returned by the appellant. The appellant was on May 17, 1891, a common carrier of goods from Indianapolis to Cincinnati, where its railway connected with the Louisville & Nashville railway, to whom it should have delivered said machinery, to be by it forwarded to its destination, which machinery was owned by appellee, and was of the value of $3,000; that appellant negligently failed to make delivery to said connecting company, but negligently did deliver said machinery to the Chesapeake & Ohio railway, whose line neither ran to Gates City, nor connected with one that did, but which went to Preston, Virginia, to which point appellant's agent negligently billed said machinery, without fault on appellee's part, and that said machinery lay at said place a long time, and, by bad handling and care, was rendered of no value, through appellant's negligence, without appellee's fault; that appellant never delivered said machinery to the consignee or the connecting line contemplated, whereby it was lost to appellee, who thereupon supplied its customer with other similar machinery, and was obliged to, and did, pay $300 damages on account of delay in delivery.

Among other terms contained in the bill of lading filed with the complaint is the following: "This bill of lading contracts rates from ———— to Preston, Virginia, *via* ———— at sixty-two cents per 100 lbs. and charges advanced at $————."

The second paragraph is identical with the first, except that it contains an averment that the said bill of lading

was not delivered to appellee, and did not come into its possession, until long after the goods should have been delivered, when it came to its hands in connection with other papers belonging to appellant and was with them returned to it; that appellant, being a common carrier of goods between Indianapolis and Cincinnati, undertook and agreed to transport said machinery with reasonable dispatch to a place on its road where the same was to be delivered to any connecting carrier making direct connection with the point to which shipment was made, for which appellee agreed to pay sixty-two cents per 100 lbs.; that it failed so to deliver said machinery, but negligently delivered it to the Chesapeake & Ohio railway, which did not go to Gates City or connect with any road that did, and negligently caused it to be sent to Preston, Virginia, where it was allowed to stay a long time, and to become damaged and valueless. Separate demurrers for want of facts were overruled, and an answer in two paragraphs filed.

The first paragraph of answer was a general denial. The second paragraph of answer is as follows: "For further answer the defendant says that it is true that the defendant did enter into a contract with the plaintiff, and that the contract between the parties was and is in writing; that a copy of said contract is herewith filed, and made a part hereof, marked 'exhibit A,' and that said contract is the sole and only contract executed between the plaintiff and defendant. The defendant says that the paper or instrument set out in the body of each paragraph of the complaint is not a copy of the contract between the parties, but is what is called a 'shipping ticket'; that the said shipping ticket was executed in duplicate, one copy of which was delivered to the shipper, and the other retained by the defendant, but both copies referred to the bill of lading, a copy of which is, as aforesaid, herewith filed, marked 'exhibit A,' and contains the contract between the parties. The defendant further avers that at the time of making the

said contract the plaintiff informed the defendant that
Gates City was not on any line of railroad, and that the
nearest station thereto on any line of railroad was Preston,
Virginia, and that the defendant was then and there in-
structed and directed by the plaintiff to ship said property
to Preston, Virginia, that being, as defendant was in-
formed and believed, and as was at said time the fact, the
nearest railroad station to Gates City, Virginia; that the
defendant, after being so instructed by the plaintiff, and
for the sake of greater certainty, did take the means to as-
certain, and did ascertain, that Preston was the nearest sta-
tion to Gates City on any line of railroad; that, as appears
in the contract between the plaintiff and defendant, the
parties agreed upon the rate of freight to Preston, Virginia,
and fixed the same as appears in their written contract made
part hereof as aforesaid; that, by the terms of said con-
tract, Preston, Virginia, was made the destination of said
property, and the rate of freight was contracted to said
point, and the defendant never agreed to deliver, and never
received any consideration for carrying or delivering it to
Gates City; that by the terms of said contract the defend-
ant undertook and agreed to carry said freight to des-
tination, if on its line, and if the destination was not
on its line then to carry it and deliver it to a connecting
carrier whose line did reach the said destination; that the
defendant's line of railroad, at the time of making said con-
tract, extended from the city of Indianapolis, Indiana, to
the city of Cincinnati, in the state of Ohio, and that at the
last-named city it connected with the line of the Chesa-
peake & Ohio Railway Company, and that the line of said
railroad ran from the city of Cincinnati to the said desti-
nation, Preston, Virginia; that the said defendant did
carry the said freight to the said city of Cincinnati, and
did then and there deliver it to the said Chesapeake & Ohio
Railway Company, and the said last-named company did
carry and deliver the same to the said city of Preston,

Virginia; that the Louisville & Nashville Railroad Company's line did not run from the city of Cincinnati to either Gates City or Preston, Virginia, and that the Chesapeake & Ohio Railway Company's line was the only direct line from the city of Cincinnati to the said destination, Preston, Virginia.

"The defendant avers that the rate of freight was agreed upon and fixed by said parties, and was intended to be fully embodied and written in said bill of lading, but by inadvertence and mutual mistake the word 'Indianapolis' was omitted from the clause of said bill of lading, which read thus: 'This bill of lading contracts rates from ———— to Preston, Virginia, at sixty-two cents per 100 lbs. and charges advanced at $———'; that it was fully agreed and understood by both the parties that the rate of sixty-two cents per hundred should be sixty-two cents per hundred from Indianapolis to Preston, but by mutual mistake of the parties the word 'Indianapolis' was not inserted after the word 'from.'

"The defendant avers that it did transport the property, in said contract mentioned, over its own lines, safely and without delay, and with all reasonable dispatch did safely carry and deliver the said property to the lines of carrier with it connecting; that such carriers did safely transport and without delay deliver said property at the station of Preston, Virginia; that the said carrier did make all reasonable and diligent inquiries to ascertain who the consignee of the plaintiff was, but was unable to find any consignee, and at once so informed the plaintiff; that the defendant immediately after learning that there was no consignee of the plaintiff at Preston, Virginia, or other person to whom the property could be delivered, or who would receive the same, so notified the plaintiff; that after such notification the plaintiff requested the defendant to return the property to the city of Indianapolis, and the defendant, acting upon the request of the plaintiff, did cause the prop-

erty to be returned to said city, where said property now is, and has been since its return; that immediately upon the receipt of the property at said city the defendant notified the plaintiff thereof, but the plaintiff refused to accept the same. The defendant avers that in shipping and transporting said property to Preston, Virginia, it acted under the contract and directions of the plaintiff as aforesaid, and in causing its return to the city of Indianapolis it acted under the instructions and directions of the plaintiff, and in all things performed its duties under said contract, and discharged all of its duties as a carrier; that the plaintiff did not pay the charges for transporting said property to Preston, Virginia, nor any part thereof; neither did it pay any charges for transporting said property from Preston, Virginia, to Indianapolis, Indiana, but all the every part of said charges remain and are due and unpaid, although defendant has many times demanded payment thereof; that the charges so owing from the plaintiff amount to a large sum, to wit, the sum of $300. Wherefore the defendant prays judgment for $400, and all other proper relief."

Exhibit A made a part of the second paragraph of answer is the same as exhibit A made a part of the complaint. The appellee replied to the second paragraph of answer by a general denial. The appellee filed a motion to require the appellant to produce for inspection certain papers, which motion, over the objection of appellant, was sustained. The case was tried by a jury, and a verdict returned in favor of appellee.

The errors assigned are that the court erred, first, in overruling the separate demurrers to each paragraph of the complaint; second, in sustaining the motion of appellee to require the appellant to produce for inspection certain documents and papers; and, third, in overruling appellant's motion for a new trial.

In its argument in support of the demurrer to the complaint it is contended by appellant that all preceding negotiations and agreements were merged in the bill of lading; that it is essentially a written contract, and determines the duty and liability of the parties, to the exclusion of all other agreements; that the shipping ticket, or shipping receipt, is not a bill of lading, and therefore is not the contract between the consignor and the consignee; that it implies that there shall be a bill of lading issued by the carrier, which shall be the contract of the carrier; that in the case at bar it is expressly stipulated that the goods are to be carried "as per conditions in company's bill of lading." It is pointed out that the bill of lading incorporated in the complaint as exhibit A contains the statement, "This bill of lading contracts rates from ———— to Preston, Virginia, at sixty-two cents per 100 lbs.;" that this was notice to plaintiff that the goods were to go to Preston, Virginia, because plaintiff did not give specific directions, and it was bound to know, and in legal contemplation did know, the terms and conditions of the bill of lading; that it was therefore negligence on the part of the plaintiff to delay to notify defendants for months that the goods were not to go to Preston. As to these objections it is to be noted that both paragraphs of the complaint deny that a bill of lading was issued to the plaintiff; that it came into the possession of the plaintiff only after the time when the machinery should have been delivered at its proper destination. The bill of lading is expressly repudiated. Specific shipping directions were written in the receipt. They were agreed to in naming the point to which they were to be shipped— Gates City, Virginia. It appears from the complaint that appellee never had notice that the goods were billed to Preston until June or July, as stated above, when the fact was learned from tracing papers shown the appellee by appellant.

It is further claimed that the contract required that a verified claim for damages must be presented within ten days, that this is a provision of the contract which is made the imperative duty of the claimant to perform, that it is a condition precedent, and that there are no facts alleged showing that a verified claim was ever presented. The complaint proceeds upon the theory that the shipping receipt, together with the printed conditions, which is the usual and customary form of bills of lading, constitutes the contract upon which the action is brought. The complaint avers that by the shipping receipt the appellant undertook to deliver the goods to the Gates City Brick Company at Gates City, Virginia, but that the shipment was carelessly billed to Preston, Virginia, by the agent of defendant company, resulting from wrong instructions given to said agent by an agent of defendant company, and that said wrong instruction was owing to no fault of appellee, and that by reason of said carelessness the same did go and there laid for a long period of time, and, by bad care, was rendered of no use or value for the purpose it was intended. While the provisions as to presenting the claim within ten days and bringing the action within one year from the date of the contract are a part of the usual and ordinary bill of lading, and the general rule is that such condition is a reasonable one, and that the giving of notice is a condition precedent to any recovery, yet the cases so holding are based upon loss or damages in transit, and do not relate to cases where there has been a conversion.

"The act of appellant alleged to have caused the loss was a tortious one, and amounted in law to a conversion." *Chicago, etc., R. Co.* v. *Fifth Nat. Bank,* 26 Ind. App. 600. Appellant disregarded instructions as to the place of shipment, and lost the benefit of exemption from liability. "The effect of a misdelivery of goods is in general the same as a total failure to deliver them at

all, and is deemed a conversion of the property by the carrier. No demand is necessary in such a case." Leaving goods at the wrong place may constitute a misdelivery and conversion of them as well as delivering them to the wrong person." Elliott, Railroads, §1526. *Railroad Co.* v. *O'Donnell,* 49 Ohio St. 489, 32 N. E. 476; *Perkins* v. *Smith,* 1 Wils. 328; *Houston, etc., R. Co.* v. *Adams,* 49 Tex. 748, 30 Am. Rep. 116; *Jeffersonville R. Co.* v. *White,* 69 Ky. 251; *Claflin* v. *Boston, etc., R. Co.,* 89 Mass. 341. Any deviation from the contract of carriage will deprive the carrier of the limitations of liability in the contract. *Georgia R. Co.* v. *Cole & Co.,* 68 Ga. 623; *Ingalls* v. *Books,* 1 Edm. Sel. Cas. 104; *Philadelphia, etc., R. Co.* v. *Beck,* 125 Pa. St. 620, 17 Atl. 505; *Uptergrove* v. *Central R. Co.,* 37 N. Y. Supp. 659; *Texas, etc., R. Co.* v. *Davis,* 2 Tex. App. Civ. Cas. 156.

It is also urged against the complaint that it does not show that the right of action is in the plaintiff, and *prima facie* the right of action is in the consignee. The complaint avers that said car of machinery shipped on the 7th day of April, 1891, as aforesaid, was then and always has been the property of the plaintiff, which the defendant agreed to carry. The language of the bill of lading as to delivery beyond appellant's line is as follows: "Which the C. C. C. & St. L. Ry. agrees to transport, with as reasonable despatch as its general trains will permit, to destination, if on its road, or otherwise to place on its road when same is to be delivered to any connecting carrier." Appellant contends that the language "any connecting carrier" leaves a discretion to the initial carrier where, as here, no specific directions are given by the shipper. In the case at bar the place of shipment was specified by the receipt. No other instructions were given. Appellant disregarded the stipulation as to the place of shipment, and shipped to another point. This was the initial wrong to

which the results were due.   "It is, in general, the duty of the initial carrier to obey the instructions   *   *   *   and transmit the instructions of the shipper to the connecting carrier."   Elliott, Railroads, §1440.

In support of the proposition that the provision of the shipping ticket reading "as per conditions in company's bill of lading" made the bill of lading and any provision written in it the governing contract between the parties, appellant cites the following cases: *Cincinnati, etc., R. Co.* v. *Berdan & Co.,* 22 Ohio C. C. 326; *Wilde* v. *Merchants, etc., Transp. Co.,* 47 Iowa 272; *Fitzmaurice* v. *Bayley,* 9 H. L. Cas. 78.   The case first named reaffirms the doctrine that a common carrier may limit his liability by a fair contract, but can not avoid liability for his own negligence.   It holds that a shipper is bound by the conditions of a bill of lading which he accepts at the time of the shipping of the goods, although he does not receive such bill of lading, or agree to it in writing.

"Where goods were shipped by railroad by the consignors at one place to consignees at another place, and under a custom, the railroad company instead of issuing a bill of lading, signed a receipt for the goods prepared by the shipper, which, at the instance of the railroad company, contained the clause, 'subject to the terms and conditions of the R. R. Co.'s bill of lading,' and such bill of lading contained the condition that 'no carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto, by causes beyond its control; or by floods or fire' not due to its own negligence, the provisions of such bill of lading become incorporated into the contract of shipment, even though the shipper was not aware that such provision was contained therein, he having the means to acquaint himself of such fact, and in such case neither the shipper nor the consignee can recover for loss by fire of the goods shipped, while in the possession of the carrier or of a connecting carrier,

bound by the same contract of shipment, such loss occurring without the negligence of such carriers." *Cincinnati, etc., R. Co. v. Berdan & Co.,* 22 Ohio C. C. 326.

*Wilde* v. *Merchants, etc., Transp. Co., supra,* holds that "where a common carrier, upon the delivery of merchandise for transportation, issued to the consignor a shipping receipt which stated that the bill of lading would be issued upon application at a place designated therein, and that the merchandise would be transported subject to the conditions expressed in the bill of lading, held, that the bill of lading and not the shipping receipt embodied the contract of the parties, and that the consignee would be bound by the conditions expressed in such bill of lading."

In *Fitzmaurice* v. *Bagley, supra,* it is held that one paper referring to another in which the terms of agreement are stated will constitute a contract sufficiently executed, according to the provisions of the statute of frauds; and this applies to the case at bar. *Dunbar* v. *Charleston, etc., R. Co.* (S. C.), 40 S. E. 884.

None of the cases cited in the very able brief of appellants hold that conditions written into the regular bill of lading—not read by the shipper—and without his knowledge, and not assented to or authorized by him, will be binding upon him.

It is denied in the complaint that any bill of lading was ever assented to by appellee or brought to his notice until long after the goods should have been delivered at their proper destination.

The action of the court in sustaining appellee's motion to produce for inspection certain papers is assigned as error. It is insisted that such a motion should be sustained only upon a clear and full showing; that plaintiff having demanded what it had no right to demand, and having failed' to give a proper description of a great number of the papers and documents demanded, the motion, as a whole, should have been denied. It is conceded that some of the docu-

ments demanded are properly described. The documents produced in obedience to the order of the court are numerous. They were communicated to appellee by appellant as representations of what appellant had done in relation to the shipment. They were declarations made by the carrier at the time it was attempting to trace the lost shipment with the object of rectifying its mistake, if possible, and making delivery according to its contract. They constituted a part of the history of the transaction between the parties to this cause. By transmitting the tracing papers to appellee, appellant adopted them as its own statements as to what became of the shipment, its present location, and intention with respect to delivery. Appellant introduced the same evidence in other forms. *Corbin* v. *Thompson,* 12 Ind. App. 511; *Toledo, etc., R. Co.* v. *Goddard,* 25 Ind. 185; *Keyser* v. *Chicago, etc., R. Co.,* 66 Mich. 390, 33 N. W. 867; *Vicksburgh, etc., R. Co.* v. *Putnam,* 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257; *La Farge* v. *La Farge Fire Ins. Co.,* 14 How. Pr. 26. Appellant was not harmed by the ruling.

The following causes for a new trial are discussed in the order named: (1) The verdict is not sustained by sufficient evidence; (2) it is contrary to law; (3) errors in rulings on the evidence; (4) instructions refused; (5) instructions given.

It is argued that the evidence is not sufficient because a bill of lading was not introduced. To quote from appellant's brief: "It was absolutely essential to a recovery by the plaintiff that a bill of lading should have been given in evidence. The foundation of the action was the bill of lading." If the premise of counsel is admitted, then the conclusion must follow, and no authority in support thereof need be cited. But the complaint repudiates the bill of lading, and denies that it was ever accepted by appellees or ever seen by them until more than thirty days after the

shipment had been accepted by appellant, and missent and lost. These facts are shown by the evidence. *Lake Erie, etc., R. Co.* v. *Holland,* 162 Ind. 406, 63 L. R. A. 948.

The condition contained in the bill of lading was by reference made a part of the agreement. The point to which the goods were shipped was named in the receipt. To the receipt must be added the conditions of the bill of lading, but matters other than conditions inserted in the bill of lading without appellee's knowledge did not become part of it. In order that appellee be charged with notice that the shipment had been made to Preston, actual notice or facts from which such notice could reasonably be inferred should be shown.

It is claimed that there is no evidence of the performance of the terms of the contract on the part of appellees; the condition as to making claim within ten days, heretofore referred to, was rendered invalid by defendant's conversion of the property. Appellant does not point out any other condition of the contract obligatory upon appellee not shown to have been performed. It is further contended that there is no evidence that appellee gave proper shipping directions. The shipping receipt sufficiently directed that the goods be sent to Gates City.

It is claimed that the verdict is contrary to law, and this claim is based upon the proposition that "the theory of the complaint is and must be that facts are stated showing a cause of action on the bill of lading." We have heretofore referred to the denial in the complaint that a bill of lading was issued or assented to by appellees. It alleges the shipment under the terms of the receipt, the misdirection of the goods, that they were turned over to the wrong connecting carrier, that they were lost and destroyed, and that they were and continued to be the property of the appellee. The general verdict found these facts, and there is evidence tending to support such finding.

We would not be understood as holding that the mere

fact that a bill of lading made by a common carrier in pursuance of a shipping receipt would not bind the shipper because it had not actually been delivered to him.   Such a bill would be binding if it were accessible to the shipper and the facts imply an acceptance, notwithstanding it has not come into his actual possession, but not if it disregarded the shipping instructions as to place of consignment.

The court refused to permit the introduction of the bill of lading.   The refusal was upon the ground that it had not been read or assented to by appellee.   The shipping receipt directs the shipment to Gates City, Virginia.   The defense is that the shipment was made on a bill of lading to Preston, Virginia.   The burden is on the defendant to show that the plaintiff assented to its billing to Preston. Clayton Potts and Albert Potts testified positively that no bill of lading, other than the shipping receipt was ever issued to them or accepted by them, and that they never saw the alleged bill of lading produced by appellant until it was shown them, attached to tracing papers, after shipment was lost.

It appears from the testimony of the appellees that they were accustomed to call the shipping receipt "our bill of lading."   There is no testimony that the bill of lading was issued to appellee, while it is in evidence that appellee sometimes applied for bills of lading.   The practice was not invariable.   But this occasional usage can not take the place of nondelivery and acceptance of the bill of lading.   Proof of such occasional practice can not overcome positive proof of the nonacceptance of the bill.   The place to which the goods were assigned was not a condition in the company's ordinary bill of lading.

Appellant contends that the admission in evidence of various communications passed between the parties through their attorneys was improper.   The objections relative to exhibits numbered 14, 15, 16, 18, 19, 27, 28, 12, and 13 are upon the ground that they were communications be-

tween attorneys relating to a compromise; that an attorney has no authority to bind his client by a compromise; and because the authority of an attorney is limited to matters actually in litigation. These letters constituted Albert Potts agent of appellant to go to Gates City and make settlement of the damages claimed by the Gates City Brick Company for appellant's benefit. In exhibits twenty-seven and twenty-eight appellee offered to send Albert Potts to the place named, for the benefit of appellant, if appellant furnished transportation and paid his expenses. The offer was accepted. Potts went to Gates City, reported the result, and appellant paid his expenses. This constituted an agreement executed, and bound appellant to pay the amount of settlement as part of the damages. We think this agreement takes the case out of the general rule as to damages for loss of goods, and binds appellant to pay the amount agreed, in addition to the value of the goods.

Appellant argues that the court erred in refusing to give to the jury the instructions 1, 3, 4, 5, 6, 7, 8, 9½, and 10. These instructions are as follows: "No. 1. The instrument copied in the complaint is not of itself a complete or final contract, for it makes the bill of lading to which it refers a part thereof by reference, and the bill of lading is the controlling part of the contract or agreement between the parties. To entitle the plaintiff to recover in this action it must establish by a preponderance of the evidence that it performed all the conditions, terms, and agreements of the contract on its part, and that the defendant did not perform the conditions, terms, and agreements on its part." "No. 3. The instrument copied in the complaint, which the witnesses have spoken of as a 'shipping ticket,' shows on its face that it was not a final or complete agreement, but was a preliminary agreement. It shows also that it was the agreement of the plaintiff and defendant that a bill of lading should be issued to the plaintiff by the defendant, and that, when issued, such bill of lading should embody the

final contract of the parties. No. 4. Under and pursuant to the provisions of the written instrument copied in the complaint, which reads thus, 'as per conditions on the company's bill of lading,' the bill of lading, as a matter of law, became part of said written instrument. No. 5. The provisions of the written instrument copied in the complaint, and spoken of by the witnesses as a 'shipping ticket,' which reads thus, 'as per conditions on the company's bill of lading,' put the plaintiff upon inquiry, and required it to take notice that a bill of lading was to be issued to it. No. 6. The defendant was not bound to make an actual, manual delivery to the plaintiff of a bill of lading in order to be entitled to treat such bill of lading as the contract under which the articles mentioned in the complaint were received for transportation, for if the defendant, at the time of the return of the shipping ticket to its office, prepared and had ready for manual or actual delivery to the defendant a bill of lading such as the usage and custom of doing business provided for or required, then and in that event the bill of lading must be regarded as constituting the contract, and as embodying the agreement of the parties respecting the transportation of the property mentioned in the complaint. No. 7. If the defendant, upon the return of the shipping ticket to its office, prepared and executed a proper bill of lading for the defendant for the transportation of the goods mentioned in the complaint, had the same in readiness for the plaintiff, and was able, ready, and willing to deliver the same to the plaintiff, who did not make a request for the same until after the alleged loss or miscarriage of the goods, then and in that event the plaintiff can not take advantage of the alleged fact, if it was the fact, that it did not actually come into possession of such bill of lading, if there was such a bill of lading, until after the alleged loss or miscarriage of such goods. No. 8. If you believe from the evidence that a bill of lading was made out by the de-

fendants for such shipment, and that such bill of lading was delivered to the plaintiff, or would have been delivered to the plaintiff by the defendant if the plaintiff had called for the same, and that such bill of lading contracted and provided for rates of freight from Indianapolis to Preston, Virginia, then I instruct you that there can be no recovery by the plaintiff, if the said shipment was delivered to Preston, Virginia, by the defendant or any connecting carrier or carriers. No. 9½. I instruct you that a bill of lading is a contract which must be signed by some one in order to be a bill of lading, and that a mere blank piece of paper, even though it contained the printed matter which may be used in a bill of lading, is not a bill of lading. No. 10. If you believe from the evidence that a bill of lading was made out by the defendant for said shipment; that said bill of lading was in writing; that it was delivered to the plaintiff by the defendant, or would have been delivered by the defendant if the plaintiff had called for the same; that such bill of lading, if any, contained the following provision, 'which the C., C., C. & St. L. Railway agrees to transport with as reasonable dispatch as its general business will permit to destination, if on its road, or otherwise to the place on its road where the same is to be delivered to any connecting carrier, and there deliver to the consignee or such connecting carrier,' and if you also believe from the evidence that the destination of said shipment was not on the defendant's road, but on the line of a connecting carrier or carriers—then I instruct you that if you believe that the defendant carried the said shipment to the end of its line, and there delivered the same to a connecting carrier, your verdict must be for the defendant."

These instructions imply that a bill of lading written and not read or accepted or assented to, and addressed to a place different from that designated by the shipper, is binding upon the consignor. This is not the law. Be-

sides no uniform custom was shown which would read into the contract a bill of lading not assented to or read.

Instructions eleven, thirteen, and fifteen are not based upon the facts as they appear from the record. To point out differences in facts upon which they are based and the facts as shown would extend this opinion to an unreasonable length. Instructions sixteen and eighteen, refused, were covered by instructions seventeen and eighteen and one-half, given. Instructions twenty-one and twenty-two, refused, are substantially covered by instruction nineteen, given. Appellant excepted to the giving of instructions 5, 6, 7, 8, 9, 10, 11, 14, 19, 21, and 23. These instructions, considered in connection with others given, are in harmony with the law as herein held, and in them we find no error for which the judgment of the trial court should be reversed.

We have passed upon the controlling questions discussed, and conclude that the cause was fairly tried, and a correct conclusion reached.

Judgment affirmed.

Black, C. J., Roby, P. J., and Robinson, J., concur. Wiley and Henley, JJ., absent.