T. RICHTER & SONS, Appellee, v. AMERICAN EXPRESS COMPANY, Appellant, et al.

CARRIERS: Interstate Shipments—Limiting Liability—Conversion by Carrier—Effect. ·Limited liability clauses in interstate bills of lading are valid, under the Carmack Amendment to the Interstate Commerce Act, even though it be conceded that the carrier, after issuing the bill of lading, *was guilty of conversion* by turning the entire carriage of the goods over to another carrier without authority from the consignee so to do. (For Carmack Amendment, see Act June 29, 1906, Chap. 3591, page 595, 34 Stat. at L.)

WEAVER, J., dissents.

*Appeal from Scott District Court.*—WILLIAM THEOPHILUS, Judge.

SATURDAY, SEPTEMBER 22, 1917.

ACTION brought by the owner ˙of a package of furs, against both defendants as common carriers. It was an interstate shipment. The goods were lost in transit and never delivered to the consignee. The action is in trover to recover the value for conversion. The contract of carriage, by its express terms,—and appellant contends by the law then in force,—limited the recovery to $50. The goods were worth more, and plaintiff sues for their actual value. Trial to a jury ˙resulted in a verdict for plaintiff against the defendant American Express Company for $1,138.75, with interest from December 19, 1913, and against the defendant United States Express Company for $50, with interest. Plaintiff waived its right to judgment against the United States Express Company, and judgment

was rendered against the American for the amount of the verdict. The judgment entry recited that the judgment should be without prejudice to any claim the American Express Company might have against its codefendant. The American Express Company appeals. The United States Company has refused to join in the appeal.—*Reversed.*

*T. B. Harrison* and *Bollinger & Block,* for appellant.

*Thuenen & Shorey* and *Lane & Waterman,* for appellee.

PRESTON, J.—The plaintiff's claim is substantially this: That it is an Iowa corporation; that each defendant is a common carrier; that defendant American Express Company had a continuous line for the carriage of goods from Brooklyn, New York, to Davenport, Iowa; that both defendants have a line to Davenport; that, some two or three weeks before December 19, 1913, plaintiff sent a package of furs to Schiff Bros., at Brooklyn, New York, to be tanned or dressed, and that, on said December 19th, plaintiff, by its agents, Schiff Bros., delivered said package to defendant American Express Company at Brooklyn for carriage to plaintiff in Davenport, and that said company accepted said package and undertook in writing to perform such services; that it did not perform said services, but, unlawfully and without the knowledge of plaintiff, delivered said package to the United States Express Company in the city of Brooklyn, thus converting said package to its own use; that the United States Express Company, knowing that plaintiff had not confided said package to it and that it had no right to take same, took it and has converted same to its own use; that said package has never been delivered to plaintiff; and plaintiff asked judgment for $1,321.15. In a second count, plaintiff asks the same judgment, and alleges further that both defendants

*[margin note:* CARRIERS: interstate shipments: limiting liability: conversion by carrier: effect.*]*

combined to injure plaintiff, the one by giving and the other by receiving and undertaking to carry the package to plaintiff, and that the package was lost or stolen from the United States Express Company car in the course of said carriage. The defendant American Express Company denied the conversion, and pleaded substantially that it has never known the contents or value of the package; that the two defendants and the National Express Company maintained a joint office in Brooklyn, where the three received and distributed shipments, using the same employees and wagons in so conducting the business; that this was well known to Schiff Bros., the consignor, who for many years had used but one express receipt book, that of the American Express Company, for all its shipments through the said office, irrespective of which of said three companies might carry its shipments. Defendant alleges that said package, addressed to T. Richter & Sons, Davenport, Iowa, was in fact delivered to the United States Express Company by Schiff Bros., though the driver left with Schiff Bros. the receipt of the American Express Company; and that said receipt was accepted by the consignor and constituted a contract for the forwarding of the furs from Brooklyn to Davenport by the United States Company; that the package was carried by the agent of said joint office to the joint office in Brooklyn without any shipping instructions from said consignor, and the United States Company thus undertook the forwarding of said package to its destination, rightfully, and with the authority, knowledge, and consent of Schiff Bros. The defendant alleged, and the evidence shows that said written contract provided, as follows:

"Nor in any event shall this company be held liable or responsible, nor shall any demand be made upon it beyond the sum of $50 upon any shipment of 100 lbs., or less, and of not exceeding 50 cents per pound upon any shipment weighing more than 100 lbs., and the liability of the

express company is limited to the value above stated unless the just and true value is declared at the time of shipment and the declared value in excess of the value above specified is paid for or agreed to be paid for under this company's schedule of charges for excess. It is also understood that the stipulation contained herein shall extend and inure to the benefit of each and every company or person to whom, through this company, the said property may be intrusted or delivered for transportation."

Said defendant also alleged, and the evidence shows, that, under the laws of Congress, both defendants had, prior to the date of the shipment in question, caused to be filed with the Interstate Commerce Commission their schedule of rates between Brooklyn and Davenport, and that said rates are based on the value of the shipments; that the rates, classifications, schedules and tariffs were jointly filed by the defendants and approved by the commission, and were in force on December 19, 1913; that such schedule contained the following provisions:

"(a) The rates governed by this classification are based upon a value of not exceeding $50 on each shipment of 100 lbs. or less, and not exceeding 50 cents per pound, actual weight, on each shipment weighing more than 100 lbs., and the liability of the express company is limited to the value above stated unless a greater value is declared at time of shipment, and the declared value in excess of the value above specified is paid for, or agreed to be paid for, under the schedule of charges for excess value in paragraph (c) of this rule. * * , *

"(c) When the value declared by the shipper, or indicated by an invoice, exceeds the value of $50 on a shipment weighing 100 lbs. or less, or 50 cents per pound on a shipment weighing more than 100 lbs., a charge for the excess value must be made according to the following schedule of charges: When merchandise rate is $3 or less per

100 lbs., 10 cents for each $100 excess value or fraction thereof. When merchandise rate exceeds $3 and not more than $8 per 100 lbs., 15 cents for each $100 excess value or fraction thereof."

Said defendant also alleges and claims that the package was accepted as an interstate shipment, subject to the terms and conditions of the receipt given in the name of the American Express Company, and subject to the regulations of the Interstate Commerce Commission under said act, and that any liability of the defendants is to be determined by the act as amended, and particularly by Section 20 thereof; that, by reason of the matters just referred to, defendants were authorized to carry pursuant to the terms of said classification, whereby the agreed value was fixed at $50, in consideration of the rate agreed to be paid for the carriage of said package, and for its loss in shipment the liability of either defendant is limited to said agreed valuation; that plaintiff knew that the rates were based upon the value of the shipment, and that, had its true value been disclosed, the rate would have been based upon a value in excess of $50, while the rate actually agreed to be paid was the lowest rate; that Schiff Bros., plaintiff's agents, in accepting the receipt without declaring the true value, and knowing the true value, were guilty of a fraud in attempting to obtain an illegal and discriminatory rate, and one lower than allowed by law. It is shown that the package in question weighed 90 pounds, and that the rate would have been $1.65 more had the true value of the package been declared. Said defendant alleges that plaintiff is estopped from claiming that the value of the package is in excess of $50; that, by declaring the true value, the consignor and plaintiff could have obtained a service involving a greater degree of care, and, in failing to declare the true value, the consignor induced the defendants to lessen their vigilance; that the value of $50 placed upon said shipment,

by the failure to declare a value thereon, was a part of the rate fixed by. law. It is alleged and shown that Rule 2 was one of the rules before referred to, and is as follows:

"The rates of the companies, parties to this classification, are conditioned upon their right to route business as they may elect, which right is expressly reserved."

Said defendant alleges that, even if it be found that the · package was received by it for shipment, still, under said Rule 2, it might forward the package over such route as it deemed shortest and least expensive, and that, therefore, there was no conversion, because defendant was acting within the terms and conditions upon which it received such package, if it be held that it did receive it. Said defendant denied generally all allegations not admitted. It is shown that the package would reach Davenport by the United States Company four hours sooner than by the American. The defendant United States Express Company pleaded substantially the same facts. Both defendants offered to confess judgment for $50 and interest and costs, which was refused. The trial court instructed that the United States Express Company was only liable for $50, but as to the other defendant, instructed on the theory of conversion, and that, under the undisputed evidence, plaintiff was entitled to recover $1,138.75 as the true value of the package, if the jury found there was a conversion. The instructions read:

"7. The only question or issue for you to try and determine in this case is: Was it within the reasonable contemplation of Schiff Bros.,—that is, within the reasonable contemplation of their president, Abraham Schiff, or their secretary, Theodore Schiff, or their shipping clerk, Paul Meyer, or their assistant shipping clerk, Charles Schiff, when the said package was delivered to Michael Connors, the joint agent of the two defendant express companies, for shipment,—that the same might be routed and forwarded

over the line of the defendant United States Express Company?

"8. It is to be presumed in this case, until the contrary appears from the evidence, that the said package was to be routed and forwarded over the line of the American Express Company; hence the burden of 'proof is upon the defendants to establish and prove by a preponderance of evidence that it was within the reasonable contemplation of Schiff Bros., when they so delivered the said package for shipment, that the same might be routed and forwarded over the line of the United States Express Company.

"9. So, in this case, if you find from a preponderance of evidence that it was within the reasonable contemplation of any one of the said persons, namely: Abraham Schiff, president, Theodore Schiff, secretary, Paul Meyer, shipping clerk, or Charles Schiff, assistant shipping clerk, of the said Schiff Bros., when the said package was so delivered for shipment to said Michael Connors, joint agent of the defendants, that such package might be routed and forwarded over the line of the United States Express Company, then in that event your verdict must be against both defendants for the sum of $50, with six per cent interest thereon from December 19, 1913; but if you do not so find, then your verdict must be against the defendant American Express Company in the sum of $1,138.75, with interest thereon, and against the defendant United States Express Company in the sum of $50, with six per cent interest thereon from December 19, 1913."

Only this one fact question was submitted, and appellant contends that the trial court denied all of its other defenses. We shall refer later to the evidence as each side claims it to be, and as bearing upon the question as to whether there was or was not a conversion. At this point, appellant contends that there is no conflict in the evidence, while appellee contends otherwise; but appellant says that,

even though there is a conflict in the evidence of the witnesses as to their purposes and intentions in making the shipment, still, under Rule 2, before referred to, defendants had the right to route the shipment as they chose, and that, therefore, there was no conversion in fact, and they contend broadly that, even though there was a conversion, there could not, under the law, and because of the provisions in the receipt and the schedules filed with the Interstate Commerce Commission, be a recovery of more than $50.

In fairness to the trial court, it should be said that some of the decisions of the Supreme Court of the United States, upon which we think a determination of the questions involved turn, were decided after the trial of this case.

1. As said, appellant contends that, though the receipt or contract is signed by the appellant, the package was accepted by the agent for the United States Express Company. There is some conflict in the testimony as to the purposes and intentions of the consignors and the driver who received the package and receipted for it and the agents of the companies, as to whether the shipment should be carried by the appellant or the United States Company. Consignors, or some of them, testify that they intended and expected the appellant to carry the furs, and that they did not authorize the United States Company to carry the package, or consent thereto; and yet the consignors, or some of them, also say that they were indifferent as to which company carried the goods, and one of them says that, when he took an American receipt, he knew that the goods might go over the United States Express Company's line. There is also some evidence as to the custom of these companies as to the method and manner of making shipments and as to the consignors' knowledge thereof, and that in some instances goods receipted for as were these, were carried by one of the other companies. We shall not go into the tes-

timony further.  It is enough to say that, if the driver and other agents were acting for these different companies jointly, they were acting for the appellant, and the appellant gave its receipt or contract and is bound thereby.

2.  Appellee says, at one point in the argument, that the plaintiff sues upon a written contract of carriage, and that the appellant, a party to that contract, in so far as the receipt is a contract, may not show by parol testimony that it was intended as a shipment over the United States Company's lines.  They say also that, although the consignors supposed they had delivered the package to appellant for carriage, they had not done so, because it was never accepted for carriage by appellant, and that the consignors never intended it to be accepted for carriage by the United States Company, and therefore there was no contract of carriage between Schiff Bros. and any person for the shipment of these goods; that plaintiff can hold the American Company bound by the contract that it led it to believe was made.  And they say that, by reason of these things, there was no contract of shipment, and the Carmack Amendment to the Interstate Commerce Law could not apply.  Plaintiff's contention is that, because appellant receipted for the goods, and, without any attempt to perform its contract, turned them over to the other company for carriage, this amounted to a conversion, and they say that it is not a mere technical conversion, and that it is not a case of loss through negligence or nonperformance of the contract, but a positive misfeasance of appellant itself,—a willful act,—as though appellant were guilty of theft, or willful destruction of the property.  Their contention is that, this being so, appellant cannot by contract limit its liability for such an amount.

Appellee contends that there was at least a conflict in the evidence as to whether there was in fact a conversion of the property, while appellant contends that, under the

undisputed evidence, there was in fact no conversion, and calls our attention to some of the circumstances which they claim so show; including Rule 2 before referred to, in regard to routing. Some of the facts referred to in a prior division of the opinion have a bearing upon the question of conversion. There are other circumstances bearing upon this question, but we shall not take the time to set out the evidence. Appellee concedes that for mere negligence or nonfeasance of duty on the part of appellant, the recovery would be limited to $50, but, as stated, contends that the rule does not apply where there is a conversion, and that a carrier may not limit its liability for loss of a shipment occasioned by its own willful wrong. It should be stated, if we have not already done so, that there is no claim in this case that there was a theft of the property by appellant or either of the defendants, or any act by them of that character. The evidence shows that the goods were lost while being carried by the United States Express Company. Appellee relies largely upon the case of *Sleat v. Fagg,* 5 B. & Ald. 342, the syllabus of which case, with three words which appellee has added in parentheses, is as follows:

" 'A parcel containing country banker's notes, of the value of 1,300£ and addressed to their clerk, in order to conceal the nature of its contents, was delivered to the carrier, without any notice of its value, to be carried by a mail coach, and was accepted by him to be so carried. The parcel was sent by a different coach (owned by others), and was lost. The carriers had previously given notice that they would not be answerable for any parcel above 5£ in value, if lost or damaged, unless an insurance were paid. No insurance having been paid in this case, held, notwithstanding, that the carrier was responsible for the loss.' The counsel for defendant relied upon the case of *Batson vs. Donovan,* 4 B. & A., 21, which was an action founded

upon the negligence or non-feasance of the carrier. The plaintiff had a verdict below for the full amount of the value of the package."

The judgment of the lower court was sustained, on the theory that it was not a case of the negligent performance of the contract, but, because defendant did not carry the package in pursuance of the contract, but substituted a different carrier, it was a refusal altogether to perform the contract, and a misfeasance. Counsel for appellee seek to distinguish *Georgia, etc., R. Co. v. Blish Milling Co.*, 241 U. S. 190 and later cases relied upon by appellant.

Appellant's contention at this point is that, under the holding in the *Blish* and other cases, the question of conversion—at least such a conversion as is relied upon in the instant case—is not controlling, and that, whether the suit is on contract or in tort, the amount of recovery is lawfully limited to the amount specified in the contract; and they quote the language of Mr. Justice Hughes in the *Blish* case:

"The words of the statute are comprehensive enough to embrace responsibility for *all* losses resulting from *any* failure to discharge a carrier's duty as to any part of the agreed transportation."

The trial court seems to have adopted plaintiff's theory, and, as we understand it, instructed the jury, under the doctrine of *Green-Wheeler Shoe Co. v. Chicago, R. I. & P. R. Co.*, 130 Iowa 123, 130, and other cases, that, if the carrier transports the goods over some other route than that specified in the contract, or reasonably within the contemplation of the parties, he must answer as for conversion. If it be conceded that, under the evidence, there was such a conflict therein that the jury was justified in finding that there was a conversion, under the doctrine of the Iowa cases just referred to, and even though, as contended by appellee, it was not a mere technical conversion, still, the goods being lost

in transit and not stolen by the defendant or its agents, it was not such a conversion as to constitute an act of misfeasance in the sense contended for by appellee; that is, as though the defendant itself had stolen or willfully destroyed the goods. In passing, we may refer to a remark of the court's in *D'Utassy v. Barrett,* (N. Y.) 114 N. E. 786, 787, that the rule should not be extended so as to permit a carrier to realize a profit by converting valuable shipments. Such conversions are so unusual as to be almost negligible. But, as before indicated, we are not now dealing with a case of conversion by theft and the like, hence do not determine the effect of such a conversion; although in the *D'Utassy* case it was held that, under the circumstances of that case, plaintiff could not recover the true value where the goods were stolen by the company's agent, and the *Blish* case was cited to sustain the proposition that the effect of the stipulation ·in the receipt or contract cannot be escaped by the mere form of the action, etc.

Appellant cites many cases which it says control the instant case, and appellee does not dispute the propositions laid down in any of them, except the *Blish* case, but contends that appellant's cases do not apply because of the alleged conversion. Among other cases, appellant cites *Adams Exp. Co. v. Croninger,* 226 U. S. 491, *Georgia, etc. R. Co. v. Blish Milling Co.,* 241 U. S. 190 (60 L. Ed. 948), *Atchison, T. & S. F. R. Co. v. Harold,* 241 U. S. 371, to the point that, by the Carmack Amendment, Congress took supreme control of a carrier's liability in interstate shipments. They also cite *Missouri, K. & T. R. Co. v. Harriman,* 227 U. S. 657 (57 L. Ed. 690), *Glassman v. Chicago, R. I. & P. R. Co.,* 166 Iowa 254, and *Herminghausen v. Adams Express Co.,* 167 Iowa 230, to the point that the Carmack Amendment furnishes an exclusive rule for the liability of a carrier under contracts for interstate shipments. Appellant also cites *Pennsylvania R. Co. v. Hughes,* 191 U. S. 477,

486, *Hart v. Pennsylvania R. Co.*, 112 U. S. 331, *Wells, Fargo & Co. v. Neiman-Marcus Co.*, 227 U. S. 469, and the *Blish* case, supra, as sustaining their contention that the defendant's liability under Section 20 of the Interstate Commerce Act does not exceed $50, and that a judgment of a state court for more than that amount deprives the defendant of a Federal right; and *Adams v. Croninger,* supra, *Kansas City So. R. Co. v. Carl,* 57 L. Ed. 683, 688, and *Missouri, K. & T. R. Co. v. Harriman,* supra, to the point that the Federal law limits the liability to $50 on the principle of estoppel; also *Cincinnati, N. O. & T. P. R. Co. v. Rankin,* U. S. Adv. Ops. 1915, page 555 (241 U. S. 319), to the proposition that, where a bill of lading contained provisions for limited liability, published rates, tariff regulations, and choice offered shipper, the limited liability was valid, and that the court will presume that such regulations had been filed with the Interstate Commerce Commission. Appellant claims also that, under the third paragraph of Section 10 of the Interstate Commerce Act, and Section 6 thereof as amended by the Hepburn Act, plaintiff was guilty of a fraud in attempting to obtain transportation for the furs in question at less than the regular rates, and to obtain a concession or discrimination; and they cite *Poor Grain Co. v. Chicago, B. & Q. R. Co.,* 12 I. C. C. R. 418, 422, as holding that:

"When once lawfully published, a rate, so long as it remains uncanceled, is as fixed and unalterable either by the shipper or by the carrier as if that particular rate had been established by a special act of the Congress. When regularly published, it is no longer the rate imposed by the carrier, but the rate imposed by the law.   *   *   *   Any departure from it, either by the carrier or the shipper, is as much a crime as it would be if the rate had been fixed by specific enactment. Not even a court may interfere with a published rate or authorize a departure from it."

This case cites *Texas & P. R. Co. v. Abilene C. O. Co.,*

204 U. S. 426. The case above referred to, as well as the case of *Wells, Fargo & Co. v. Neiman-Marcus Co.,* supra, is quite similar to the instant case, though it does not have the conversion feature. But, as we understand it, appellant's claim at this point is that plaintiff or its agent, Schiff Bros., knowingly and willfully, by false billing or false classification, sought to obtain transportation at less than the regular rates. We do not deem it necessary to determine this point. It may be remarked, however, that, while no other valuation was placed upon the package of furs than that stated in the receipt, it appears that the agent who received the package did not ask for its true value, nor was it given by the consignors. Schiff Bros. testify that, under the circumstances, they would not give a valuation unless directed so to do by plaintiff. Finally, appellants contend that a recovery for full value in this case gives the shipper an undue advantage, and is a favoritism which the Commerce Act was designed to avoid, citing *Pierce Co. v. Wells, Fargo & Co.,* 236 U. S. 278 (59 L. Ed. 576).

We are of opinion that the instant case is ruled by the *Blish* case. The Supreme Court points out, in the *Croninger* case, the confusion that existed in the various states as to validity of limited liability clause in interstate carriage contracts, before the Carmack Amendment. Appellant contends that, if plaintiff's theory in regard to conversion prevails, the national law will be circumvented, and the former chaos will return; that the $50 limit would stand by virtue of the Federal statute, except in cases of conversion. It is argued that, as to the owner of goods, there can be no difference whether the goods are lost or stolen and converted by the carrier; that the owner has simply lost his goods; that the shipment does not lose its interstate character simply because it was converted. It is argued, too, that the Carmack Amendment does not provide that a bill of lading shall be null, nor its conditions void,

nor that a shipper may recover more than the amount stated, if there be a conversion by the carrier, and that the state courts are without authority to declare the $50 limitation of liability provision of the contract, or any of its provisions, void, unless so authorized by Congress. It is argued, too, that the express company's tariff sheet contains no provisions for the payment of more than the agreed valuation based upon the transportation charge, even in the case of conversion by the company's employees. It may be, as contended by appellee, that, under the authorities cited by it, a conversion by appellant in turning over the furs to the other company would constitute an abandonment or waiver of the contract, but we think this does not apply to interstate shipments since the passage of the Carmack Amendment. On the date of the shipment in question, defendants had filed their tariffs, rules, and regulations, including the $50 limit of liability for loss. The contract of shipment and the receipt were issued to plaintiff in accordance therewith. These terms may not be varied by the parties. The contract imposes a duty upon the carrier, and this is imposed by the law itself. It would seem that neither the shipper nor the carrier could waive or abandon what the law demands of each of them, and that is, an adherence to the contract. To hold otherwise, and allow a recovery in one amount for conversion, such as is here alleged, and limit the liability in other cases, would be likely to open the door to rebating, favoritism, and other abuses which it was the purpose of the Commerce Act to avoid.

Coming now to the *Blish* case. There it was claimed there was a conversion, and a recovery sought otherwise than according to the terms of the shipping contract. The suit was brought in trover. This is the technical name of the common law action provided for the redress for conversion. The point in the contract that plaintiff sought to escape by suing in trover was not the agreed amount of re-

covery, as in the instant case, but it was in a sense a limitation of liability; it was as to the time and manner stipulated in the contract as to notice of loss. The bill of lading provided that claims for loss or damage must be made to the carrier within four months. The restrictions of the shipper's rights in that case reduced the time of plaintiff's remedy, and in the instant case, the amount. The holding of the Georgia court was, substantially, that the carrier was guilty of conversion, in making a misdelivery of the shipment contrary to the terms of the bill of lading, and that the carrier had thereby abandoned the contract of carriage and could not, therefore, insist upon the stipulation providing for the written notice of loss within four months; and it allowed the plaintiff to recover the value of his shipment (82 S. E. 784). In the instant case, appellee contends that, because of the alleged conversion, the clause in the contract of carriage limiting the carrier's liability to $50 should be held to be invalid, but that clause was approved by the Interstate Commerce Commission, and, under the authorities before cited, such a clause has been held comprehensive enough to embrace all losses and liability that could result from any failure of duty, on the carrier's part, with respect to the shipment. In the *Blish* case (241 U. S. 190), it was said, in respect to the alleged conversion, that the stipulation in the contract could not be escaped by the mere form of action, and that:

"The action is in trover, but, as the state court said: 'If we look beyond its technical denomination, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier.'"

So it is in the instant case,—a suit to recover the value of the shipment. It is also said in the *Blish* case:

"It is urged, however, that the carrier in making the misdelivery converted the flour and thus abandoned the contract. But the parties could not waive the terms of the con-

tract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed."

And so it is here. Appellant could not waive the terms of its contract with plaintiff, neither could it, by its conduct, conversion, give plaintiff the right to ignore the agreed $50 limitation of liability, and plaintiff may not hold the appellant to any different responsibility than that fixed in the contract. The *Blish* case is cited, though under somewhat different facts, in *D'Utassy v. Barrett,* supra, and *Metz Co. v. Boston & M. R. Co.,* (Mass.) 116 N. E. 475. Counsel for appellee seeks to distinguish the *Blish* case from the present case by saying that the conversion in the *Blish* case was purely technical, and that the conversion in the case at bar was real and a misfeasance, but in the *Blish* case the Supreme Court of Georgia (82 S. E. 784, 787) condemned the carrier by saying:

"The railway company, without regard for the Milling Company's rights or wishes, and in violation of its expressed intention, committed conversion."

This is substantially the same claim as appellee makes here. We are of opinion that the *Blish* case determines the instant case, and that the $50 limitation is, under the record in this case, valid and binding, and limits plaintiff's recovery to that amount.

The cause is therefore reversed, with directions to the district court to enter a judgment for $50 with interest at 6 per cent from December 19, 1913, the interest to be computed and included in the judgment. In that case, the defendant having made a tender, the plaintiff will pay all

costs in the district court and in this court.    It follows, then, that the judgment of the district court ought to be, and it is,—*Reversed.*

GAYNOR, C. J., LADD and STEVENS, JJ., concur.

WEAVER, J., dissents.