T. L. WOLFE, Appellee, v. AMERICAN RAILWAY EXPRESS COMPANY, Appellant.

CARRIERS: Acceptance of Unsigned Interstate Bill of Lading. An *unsigned* interstate bill of lading providing for limited liability on the part of the carrier because of the rate charged is binding upon the shipper *if he accepts it* at the time of the shipment.

*Appeal from Linn District Court.—*F. L. ANDERSON, Judge.

FEBRUARY 5, 1924.

AN action to recover of a common carrier the value of a trunk and contents lost in transit. From a judgment for plaintiff for the full value of the shipment the defendant appeals.—*Reversed and remanded.*

*Carl F. Jordan,* for appellant.

*Stewart Holmes* and *Redmond & Stewart,* for appellee.

VERMILION, J.—The trunk in question was accepted from the plaintiff and appellee by the defendant, the appellant, at Mt. Vernon, Iowa, for transportation to Chicago, Illinois, consigned to the plaintiff. It was not delivered in Chicago on demand of the consignee, and has never been delivered. The only question is whether the plaintiff is entitled to recover the actual value of the trunk and contents, or is limited to a recovery of 50 cents per 100 pounds of its weight. Before the trial, the defendant offered to confess judgment for an amount sufficient to cover the value of the shipment at the rate of 50 cents per 100 pounds, with interest thereon and costs. The jury was instructed that plaintiff was entitled to recover the reasonable value of the shipment, and the only question submitted for de-

termination was what was the reasonable value of the trunk and contents.

It is shown without dispute that plaintiff notified the defendant's agent at Mt. Vernon that he desired to ship the trunk, and would prepay the charges. The trunk was found by one of defendant's employees in front of plaintiff's office, taken to the office of defendant, and forwarded. Plaintiff paid the charges demanded, and received what is designated as a receipt for the shipment, either at the time the trunk was so taken or on the next day. The plaintiff testified that he thought he received the receipt and paid the charges at the time the trunk was delivered to the carrier; while the testimony on behalf of defendant was to the effect that plaintiff notified defendant's agent by telephone that he ''had a trunk, and he wanted the drayman to bring it to the office to ship out, and he wanted to prepay the charges on it, and he would be over later;'' that the trunk was found by defendant's drayman in front of plaintiff's office, taken by him to the express office and shipped, and the next day plaintiff paid the charges and received the receipt. We do not regard this conflict as at all material. Whether the charges were paid and the receipt delivered at the time the trunk was taken or received by the company for shipment, or later, it was, as we shall presently see, all one transaction. It is also without dispute that the so-called receipt was a printed form, with only a portion of the blanks therein filled. The blanks filled showed the date and place of issue, the destination of the shipment, the name and address of the consignee, a description of the shipment and its weight, the amount of charges and war tax, and the name of the shipper. It was, at the time of delivery, unsigned by either the agent of defendant or by the shipper. After the failure of the company to deliver the trunk, the receipt was, at the request of the plaintiff, signed by the agent of the defendant at Mt. Vernon.

The so-called receipt is in form a contract of shipment, and such, we understand, as is authorized by the interstate commerce commission. If its delivery to and acceptance by the plaintiff, either at the time the trunk was accepted by the defendant or at the time the charges were prepaid, bound the plaintiff by its terms, it was the contract of shipment, and gov-

erms the rights and liabilities of the parties. No question of consideration for the contract limiting the carrier's liability for loss or damage embodied in its terms is presented; for it was either delivered to and accepted by the plaintiff at the time the plaintiff requested transportation of the trunk, in which case there was plainly a consideration, or, if delivered and accepted subsequently to the acceptance of the trunk for shipment, any contract implied from the mere acceptance of the shipment expressly contemplated and provided for the prepayment of the charges; and the amount of the charges, it must be conceded, would depend on the terms of the contract of shipment. If the charges were paid and the receipt given at the time the shipment was accepted, then the contract of shipment was complete, whether it was such as is embodied in the receipt or not. If the trunk was shipped and, on the following day, the charges were paid and the receipt accepted, all in pursuance of the request of the plaintiff that the trunk be taken to defendant's office to be shipped out, and that he wanted to prepay the charges and would be over later, it was not a completed transaction until that was done. The charging and payment at the time of a rate dependent on the value of the shipment would be a sufficient consideration for a contract limiting the defendant's liability in case of loss, if such a contract was made. The case in this respect differs in its facts from *Stoner v. Chicago G. W. R. Co.*, 109 Iowa 551, relied upon by appellee. The trunk, it is true, was shipped out on the day it was taken from plaintiff's office; but this fact cannot affect the question, for that was done either in pursuance of a then completed contract or in contemplation of a contract to be thereafter completed.

The case turns upon the question whether the plaintiff is bound by the terms and conditions of the receipt; but this is not controlled by a determination of the question whether the receipt was delivered to plaintiff at the time the trunk was accepted, or at a later time, when the charges were paid, in pursuance of an arrangement made by plaintiff. The plaintiff's act in accepting the receipt at the time he paid the charges— assuming the facts to be as disclosed by defendant's testimony— operated to give it the same status and effect it would have had if delivered to and accepted by him at the time the shipment

was accepted by the defendant. The same thing is true, we think, with respect to the signature of defendant's agent on the receipt. It was affixed at the request of plaintiff after, and with full knowledge of, the loss. If the signature of defendant's agent was essential to make the receipt binding upon plaintiff, as limiting the liability of the defendant for loss, then, since it was put there at the instance of plaintiff, acting with full knowledge, he is in no position to complain that it was not there at the time he accepted the receipt.

The ultimate question, then, is whether the plaintiff is bound by the terms and conditions of the receipt by the mere acceptance of it, and without his having signed it.

This was an interstate shipment, and the question arising must be determined under the Federal Statutes relating to interstate commerce. Section 8604a, U. S. Compiled Statutes, after providing in substance that no contract, receipt, rule, regulation, or other limitation of any character shall exempt a common carrier from the liability therein imposed for any loss, damage, or injury to property received for transportation, contains the further provision:

"That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply, * * * second, to property, except ordinary live stock, received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or required by order of the interstate commerce commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of Section 10 of this act to regulate commerce, as amended; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared or agreed upon; and the commission is

hereby empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation.''

The rates in defendant's schedule on file with and approved by the interstate commerce commission were based upon the declared or agreed value of the shipment.

After the trial in the court below, the Supreme Court of the United States, in the case of *American R. Exp. Co. v. Lindenburg,* 260 U. S. 584, reversed the holding of the Supreme Court of Appeals of West Virginia, 88 W. Va. 439 (106 S. E. 884), to the effect that the express company should have given the shipper ''a receipt specifying a value fixed by himself, and evidenced by his signature. * * * A writing not signed by him, although specifying value, was not a declaration or agreement in writing by him.''

It is there said, concerning this question:

''Neither the statute nor the order of the commission requires the signature of the shipper.' The pertinent words of the statute are: '* * * rates dependent upon the value declared by the shipper or agreed upon in writing as the released value * * *.' It is not to be supposed that the commission would attempt to add anything to the substantive requirement of the statute, and its order does not purport to do so; but the form of receipt which the express companies were authorized to adopt contains a recital to the effect that, as evidence of the shipper's agreement to the printed conditions, he 'accepts and signs this receipt,' and a blank space is provided for his signature. Naturally, such signature would be desirable as constituting the most satisfactory evidence of the shipper's agreement, but it is not made a prerequisite without which no agreement will result, and a subsequent report of the commission on the subject of bills of lading is persuasive evidence that there was no such intention. *In re Bills of Lading,* 52 I. C. C. 671, 681, where it is said: 'It is sufficient if the shipper accepts the carrier's bill of lading without himself signing it. It becomes binding upon him by his acceptance, he being presumed to know and accept the conditions of the written bill of lading.' The respondent, by receiving and acting upon the receipt, although signed only by

the petitioner, assented to its terms, and the same thereby became the written agreement of the parties [citing cases]. In the absence of a statutory requirement, signing by the respondent was not essential [citing cases]. His signature, to be sure, would have brought into existence additional evidence of the agreement, but it was not necessary, to give it effect.''

In the cited case, it is true, the receipt was signed by the carrier. The decision is not, however, based upon that fact, but upon its acceptance by the shipper. If, in the instant case, the receipt be considered as unsigned by the defendant's agent, notwithstanding the plaintiff's procurement of his signature upon it after the loss, still there is present the controlling fact of its acceptance, which, under the cited authority, requires a holding that the receipt was the written agreement of the parties under which the shipment was made.

The receipt provided:

''Received shipment described herein, subject to the classifications and tariffs in effect on the date hereof. Value declared by the shipper to be............dollars (see note). Which the company agrees to carry upon the terms and conditions printed herein to which the shipper agrees and as evidence thereof accepts and signs this receipt.''

The value of the shipment was not stated on the receipt, nor was it stated or declared by the plaintiff in any manner.

Among the terms and conditions appearing on the receipt, however, was the following:

''In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding $50 for any shipment of 100 pounds or less, and not exceeding 50 cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than $50 for any shipment of 100 pounds or less, or for more than 50 cents per pound, actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as

last above set out and that the liability of the company shall in no event exceed such value."

This provision of the receipt, which must be held binding upon the plaintiff by reason of his acceptance of it, disposes of the claim that the rate paid by plaintiff was not shown to be the rate charged for a limited liability; for it is there stipulated that the rate charged is dependent on the value of the property carried, and is based upon an agreed valuation of not exceeding 50 cents per 100 pounds, unless a greater value is declared by the shipper, and that, in the absence of a declared value exceeding that amount, the liability of the carrier shall not exceed that value. As stated, no value was declared, and in that event, this provision of the receipt is conclusive that the rate charged was based on a value of not exceeding 50 cents per 100 pounds, and that the liability of the carrier is likewise limited to that value.

The plaintiff was not entitled to recover more than 50 cents per 100 pounds for the weight of the trunk and contents.— *Reversed and remanded.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.