JOE MURPHY, Appellee, v. SOUTHERN IOWA ROUTE, Appellant.

No. 46427.

MAY 2, 1944.

E. K. Bekman, of Ottumwa, for appellant.

X. C. Nady, of Fairfield, and Walter F. Maley, of Des Moines, for appellee.

BLISS, J.—There is no controversy over the facts. By stipulation and evidence it appears that: The defendant, a copartnership, operates a motorbus line between Fort Madison and Ottumwa, as a public common carrier, under authority of a certificate of convenience and necessity issued by the Iowa State Commerce Commission; on March 16, 1941, the plaintiff, paying full fare therefor, purchased a ticket of defendant at Cantril, Iowa, for passage therefrom to Des Moines, Iowa; the ticket which plaintiff received had printed thereon the words: "Subject to tariff regulations. Baggage liability limited to $25.00"; plaintiff attempted to take with him into the bus a pasteboard carton of clothing and other articles which he told the operator was valuable; over plaintiff's remonstrance that the velocity of the wind was too high to place the carton outside on top of the bus, the operator told him the baggage could not be carried inside the bus, and took the carton, which was bound with rope, from plaintiff's custody, and placed it on top of the bus; the carton was 30 by 24 by 18 inches; the value of the baggage was not inquired about by the bus operator, and its value was not declared by the plaintiff, and he paid only the regular passenger fare; when the bus reached Milton, Iowa, it was discovered that this baggage was not on top of the bus, and on a search then made along the route just traveled the baggage was not discovered; at all times pertinent hereto the defendant had on file with the Iowa State Commerce Commission its passenger tariff schedule; there is no showing that it had been approved by the commission; said schedule provided that baggage not in excess of one hundred pounds would be carried without extra charge, on the regular passenger fare, and unless a greater value was declared and paid for at the increased rate provided for in the schedule the value of the baggage would be deemed and agreed to be not in excess of $25, which sum should be the limit of defendant's liability in the event of loss of or damage to the baggage; the baggage, according to plaintiff's testimony, weighed about seventy-five pounds, and was of the reasonable value of $295.20; the passage provided by the ticket was over a route wholly within the state of Iowa. An offer of the defendant, before trial, to confess judgment for $25 was refused by the plaintiff. The amount of the judgment is $295.20. An opinion

was filed by the trial court finding that the defendant was negligent in the care of the baggage. Therein the court noted its conclusion that it was lawful for the defendant, by virtue of its tariff schedule of rates, fares, regulations, etc., on file with the Iowa State Commerce Commission, to make the special contract with plaintiff, limiting to $25 the damages recoverable for the loss of the baggage. There is no evidence in the record that the commission made this tariff schedule respecting the baggage rate or limitation of value, nor that it had approved the same. It was the theory of the trial court that if the plaintiff had knowledge of this tariff regulation and had assented to it, he would be estopped to claim and recover a higher valuation for the baggage than that recited in the schedule and noted on the ticket.

But the court further found that knowledge of the tariff regulation was not brought to the plaintiff; that this was not done by the limitation provision printed on the ticket alone, since the ticket was not the contract of transportation and did not purport to set forth the terms of such contract, and was merely a voucher or token that he had paid his fare and was entitled to the transportation indicated, and that it was merely evidence of a right to the transportation; that the plaintiff had no actual knowledge of the tariff schedule filed with the commerce commission, and was not informed by the driver of the provisions of the schedule. It may be here noted that no mention of the tariff schedule or the value limitation of the baggage was alleged in plaintiff's petition. Also, that the answer contained no allegations as to these matters, or that the plaintiff had knowledge thereof or assented thereto. The answer contained no affirmative defense. Defendant therein admitted that it operated a motorbus as a public carrier between Ottumwa, Iowa, and Fort Madison, Iowa, and that the route passed through Cantril, Iowa. It denied all other allegations of the petition, on information and belief. The petition of plaintiff contained no allegation respecting his knowledge or lack of knowledge of the tariff schedule or the value limitation of the baggage. Neither did he testify as to these matters. It was stipulated that the tariff schedule, which was received in evidence without

objection by plaintiff, was on file with the commerce commission at all times pertinent.

1. Appellant in its printed argument refers to the Code section which vests authority in the Iowa State Commerce Commission to fix or approve rates, rules, and regulations pertaining to motor carriers. Section 5100.04, Code of 1939, provides that:

"All control, power, and authority over railroads and railroad companies now vested in the commission, insofar as the same is applicable, are hereby specifically extended to include motor carriers."

The control, etc., referred to include the provisions in chapters 368 and 373 of the 1939 Code.

Appellant also cites 13 C. J. S., Carriers, 1702, 1703, section 876; Richter v. American Exp. Co., 180 Iowa 1037, 164 N. W. 228, L. R. A. 1918A, 749; and Wolfe v. American Ry. Exp. Co., 197 Iowa 216, 197 N. W. 24. These two cases involve interstate shipments and have no applicability, except perhaps by analogy. The case before us involves a strictly intrastate transaction and setting. The entire route and both termini thereof, and the termini of plaintiff's trip were in Iowa. So far as the record shows, appellant's line is not a connecting link in any interstate line, and its tariff schedule was not filed with the Interstate Commerce Commission. Whatever basis the appellant may have for its defense must be bottomed upon the provisions found in chapters 368 and 373, particularly the latter, of the Iowa Code of 1939. These two cases are cited by appellant in support of its contention that since its tariff schedule was on file with the commission, and since the plaintiff did not declare a higher valuation than the $25 limitation noted in the tariff schedule, he is presumed to have contracted for passage on the basis of 'the schedule and to be bound by its terms, even though he had no knowledge of the schedule or its provisions.

In reply to appellant's argument, appellee calls attention to sections 8042 and 8043, Code of 1939. The first provides:

"Limitation on liability. No contract, receipt, rule, or regulation shall exempt any railway corporation engaged in

transporting persons or property from the liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule, or regulation been made or entered into.''

The second section referred to provides:

''Limitation on liability. No contract, receipt, rule, or regulation shall exempt any corporation or person engaged in transporting persons for hire from the liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule, or regulation been made.''

These two sections first appeared in the Code of 1873 [sections 1308 and 2184], and were enacted by the Eleventh General Assembly, in chapter 113 of its Acts, effective by publication in April 1866, entitled ''An Act to define the liabilities of railroads, and other transportation companies, as common carriers.'' These sections have come down unchanged in every subsequent Code, and since the Code of 1924 they have been in chapter 373 of each Code, entitled ''Regulation of Carriers.''

In the same chapter is section 8161, to wit:

''Baggage—liability. Omnibus and transfer companies or other common carriers, and their agents, shall be liable for damages occasioned to baggage or other property belonging to travelers through careless or negligent handling while in the possession of said companies or carriers * * *.''

This legislation was enacted by the Thirteenth General Assembly, chapter 165, effective in April 1870.

While there was some legislation requiring the making and posting of nondiscriminatory rates by railway common carriers by the Ninth General Assembly, chapter 169 (2) and the Thirteenth General Assembly, chapter 121, legislation respecting the board of railroad commissioners, and rate legislation, in substance as it appears in chapter 373, Code of 1939, was first enacted by the Twenty-second General Assembly, chapter 28, effective in April 1888.

At common law the public carrier of property for hire, with certain well-recognized exceptions, has always been regarded as an insurer of the property carried. Coggs v. Bernard, 2 Ld. Raym. [K. B.], 909, 1 Smith's Leading Cases, Eighth Ed., 199.

Except as it has been modified by legislation, that is, in general, the measure of a common carrier's liability today.

Whether the appellant could lawfully limit its liability as a common carrier for the loss of appellee's baggage by the tariff schedule upon which it relies, or whether any of the Code sections 8042, 8043, or 8161, supra, restrain or limit the authority or power of the Iowa State Commerce Commission to make or approve such a tariff schedule of rates and regulations, or whether the filing of such a schedule with and approval thereof by the commission, charges the passenger with knowledge of such schedule provisions, or whether actual assent thereto must be given by the passenger before he is bound thereby, are each and all questions which we do not decide. They are matters of importance to the carriers and to their passengers. The parties have discussed them but slightly, and their consideration and decision are not necessary to the decision of this appeal.

II. It is our conclusion, however, that if it be conceded, for the purpose of argument, that the tariff schedule relied on was a reasonable and lawful one and within the powers of the commerce commission, and that the appellee accepted and assented to its provisions, nevertheless, under the record, the judgment must be affirmed. For if it be granted that this special contract was entered into, it was, nevertheless, the duty of the appellant, as a common carrier, to use reasonable care to provide a suitable and reasonably safe place for the carriage of the baggage. It is implicit even in such a contract that the passenger could rely upon such care being exercised. Any such contract as the appellant relies upon would not permit it to deliberately and intentionally place the baggage in a place which, in itself, was unsafe, and still limit its liability to the restricted valuation. Particularly is this true when the appellant was warned and had reason to believe that the baggage would be blown from the top of the bus by the high wind, or be jolted off. A common carrier is required to furnish a vehicle, or place, or means of carriage, reasonably suitable for the safe and proper transportation of baggage or freight, according to its nature or character. It cannot, with impunity, place property which would be thereby lost, injured, or destroyed in a defective or open car or place of carriage, exposed to the elements, and escape the

liability for the *actual* loss sustained, even though shipped under a limited-liability contract, when the shipper has not assented to the exposed carriage.

A common carrier is ordinarily not responsible for the disappearance of baggage which was in the personal control and custody of the passenger. The liability for its loss or disappearance attaches when the carrier takes complete care, custody, and control of the baggage. Jensen v. Interstate Transit Lines, 221 Iowa 513, 517, 266 N. W. 9.

The appellee, knowing the value of the baggage, and realizing the danger of putting it on top of the bus, attempted to take the baggage into the bus with him, but the appellant did not permit him to do so, though informed of the danger and that the baggage was valuable, and took exclusive control of the baggage. Under Code section 8161, the appellant is made liable for damages occasioned by its careless or negligent handling of baggage in its possession. The trial court found it was negligent. The loss of the baggage is conceded. That the top of the bus was an unsafe place, and the deliberate act of the appellant in placing the baggage there, without protection, was a proximate cause of its loss, have ample support in the record, as does the finding of negligence by the court, and the judgment entered.

The judgment is therefore—Affirmed.

All Justices concur.