H. D. FOY v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

December 19, 1895.

Nos. 9604—(201).

Connecting Carriers—Unauthorized Delivery.

The defendant, the last of several connecting common carriers, delivered the goods, at their destination, to a person other than the consignee, by reason of wrong directions given him by one of the prior connecting carriers, without authority of either the consignor or consignee, and without the surrender of the bill of lading issued by the initial carrier. *Held*, such prior carrier did not have apparent authority so to order the goods delivered to such third person, and the defendant is liable for conversion of the goods.

Appeal by defendant from a judgment of the district court for Hennepin county in favor of plaintiff, entered in pursuance of the findings and order of Russell, J. Affirmed.

*W. H. Norris* and *F. W. Root*, for appellant.

*Stiles & Stiles*, for respondent.

CANTY, J. On December 1, 1893, the owners of a car load of oranges shipped the same from a point in Florida to the plaintiff,

[1] Reported in 65 N. W. 627.

doing business as H. D. Foy & Co., at Minneapolis, and received from the initial carrier a bill of lading in which plaintiff was named as consignee. This bill of lading was forwarded to plaintiff. On December 8 the defendant railway company received the car of oranges at Chicago from the next prior carrier, and carried it to Minneapolis. With the car, defendant received from the next prior carrier an expense bill, specifying the amount of freight due all the prior carriers (which it paid), and naming J. A. Shea & Co., at Minneapolis, as the consignee. This was all the shipping direction defendant received. When the oranges arrived at Minneapolis, they were delivered to Shea & Co., who were commission merchants at that point, and who paid the total amount of freight due on the car. Plaintiff is also a commission merchant at Minneapolis, and the oranges were shipped to him to sell on commission. After the oranges were delivered to Shea & Co. as aforesaid, the shippers sold and assigned the same to plaintiff, who thereupon brought this action for the conversion of the oranges by the defendant. On the trial before the court without a jury, judgment was ordered for plaintiff for the value of the oranges, less the freight, and from the judgment entered thereon defendant appeals.

The only error assigned is that the findings of fact do not support the judgment. The court found all of the facts above stated, and, in addition thereto, found as follows: "Between the 10th and 12th of December, 1893, the exact date not appearing, plaintiff notified defendant's agents that he was looking for a car of oranges from Florida. On the 13th of December, 1893, plaintiff was informed that the car specified in the foregoing bill of lading was on the tracks of defendant's railroad at Minneapolis, and, upon receiving such information, went to the general freight agent of defendant at Minneapolis, showed him the bill of lading for the car of which the above is a copy, and called attention to the fact that he was named therein as consignee. Defendant's agent informed plaintiff that the car was billed to defendant, with J. A. Shea & Co. as consignee, and that J. A. Shea & Co. had been notified of its receipt, and were proceeding to take out the boxes of oranges. At the time of this conversation Shea & Co. had taken out one wagon load. In connection with this conversation, and while plaintiff was still at the office, defendant's agent notified Shea & Co. of plaintiff's claim, and re-

quested them to take out no more boxes, and to sell none of those they had taken out until hearing further from defendant. This Shea & Co. agreed to do, and held the oranges as they were until the following day. Immediately following the conversation, and on the same day, defendant instituted inquiry by wire relative to the correctness of the billing to it, with special reference to the name of the consignee, making this inquiry of the Chicago & Eastern Illinois R. R. Co., the carrier who had delivered the car to it; itself (the defendant) going back no further to any of the previous connecting carriers, nor to the initial carrier. On the same day the defendant was informed by the said Chicago & Eastern Illinois R. R. Co., that the car was originally billed to H. D. Foy & Co., as consignee, but had been by it, under instruction received from its preceding carrier, changed to J. A. Shea & Co., as consignee, and that the said J. A. Shea & Co. was the proper consignee, whereupon the defendant permitted Shea & Co. to take out the oranges from the car, and interposed no further objection to the taking of the same, and so completed the delivery, and informed plaintiff that it would not deliver the car to him." These are all of the facts which it is necessary to state.

Appellant contends that its prior connecting carrier was the agent of the shippers and owners, and as such had apparent authority to change the consignee originally designated by such owners. Whitney v. Beckford, 105 Mass. 267, and Patten v. Union Pac. R. Co., 29 Fed. 590, are the only authorities cited in support of this proposition. In the case of Whitney v. Beckford the commission merchants who acted as agents of the consignee in purchasing for him a car load of goods by mistake changed during transit the consignee and destination of the goods. The court held that these commission merchants had "apparent authority to direct where the goods bought shall be sent," and held that the second consignee, who in good faith received the goods and paid the freight, had a lien on them for the freight so advanced, and should be allowed the amount of that freight in mitigation of damages in a suit against him by the owner for conversion. But, even if such a factor or commission merchant has apparent authority to change the consignee during transit (on which question we express no opinion), it does not follow that a prior connecting carrier has such apparent authority; but we are clearly of the opinion that he has not, at least when a bill of lading was is-

63 M.—17

sued by the initial carrier, and not surrendered at the time of such change. In the case of Patten v. Union Pac. R. Co., Mr. Justice Brewer holds "that a carrier receiving goods for transmission over his own line, and consigned to a place beyond, has the apparent authority to forward the same to the place of destination by any of the ordinary routes thereto, and that such second carrier, receiving the goods in the usual and ordinary course of business, without notice of any special instructions to the first carrier," has a lien on the same for the freight. To what extent this case is good law, we need not inquire. It is no authority for the proposition that the prior carrier has apparent authority to order the goods delivered to some one other than the consignee.

Appellant contends that it had a right to suppose that the consignors had stopped the goods in transit, and ordered them delivered to another person than the consignee. Whether the prior carrier had apparent authority to order the goods stopped in transit, we need not consider. We are of the opinion that, even if it had, it does not follow that it had apparent authority to order them delivered to a third party, at least when a bill of lading was issued and not surrendered.

This disposes of the case. Judgment affirmed.