MIDLAND VALLEY RAILROAD COMPANY *v.* J. A. FAY & EGAN COMPANY.

Opinion delivered February 22, 1909.

1. CARRIERS—LIABILITY FOR CONVERSION OF FREIGHT.—Where freight is shipped subject to shipper's order, and the carrier delivers the freight to another without the production of the bill of lading properly indorsed by the shipper, it becomes liable to the shipper for the value of the freight. (Page 345.)

2. SAME.—Where a carrier delivered freight shipped subject to shipper's order to another without requiring the bill of lading to be produced, the failure of the shipper to endeavor to recover possession of the freight did not relieve the carrier of liability. (Page 346.)

3. SAME.—CONVERSION OF FREIGHT—EFFECT OF ITS RETURN.—Where a carrier converted freight consigned to shipper's order by delivering it to another without production of the bill of lading indorsed by the shipper, its liability for such conversion would not be relieved by the subsequent return of the property, if the shipper's damages exceeded the value of the property so returned. (Page 346.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

*Ira D. Oglesby,* for appellant.

If there was a wrongful delivery, appellee had the right to treat it as a conversion, or to acquiesce in and ratify the delivery. All the facts and circumstances show a ratification by the appellee of the delivery. Hutchinson on Carriers, § § 183, 678; 29 S. E. 816; 160 Ill. 401; 58 N. H. 521.

*Brizzolara & Fitzhugh,* for appellee.

1. Where a bill of lading directs delivery to the *vendor's order,* or his assigns, the carrier is notified that it must not deliver to the consignee without the bill properly indorsed by the consignor. If it delivers otherwise, it will be liable. Hutchinson on Car. § 131; Moore on Car. 212; 79 S. W. (Tex.) 1094; 106 N. Y. 579; 160 Ill. 401, 406; 77 Ark. 482.

2. In such case the measure of damages is the value of the goods, not exceeding the amount of the draft drawn upon the consignee. Moore on Car. 419; 136 S. W. 183.

3. Acceptance of money, or attempting to collect, from the mill company did not operate as a waiver of plaintiff's claim against appellant. Moore on Car. 209; 92 Hun. 343.

4. Plaintiff's action in retaining the money sent by the mill company, being in the interest of the defendant in reducing its liability, did not estop the plaintiff to enforce its demand against defendant. Bigelow on Estoppel, 672.

BATTLE, J. J. A. Fay & Egan Company is plaintiff, and the Midland Valley Railroad Company is defendant, in this action. Plaintiff alleges in its complaint that both parties are corporations; that, on or about the 6th day of March, 1905, it sold to the Muskogee Sawmill & Manufacturing Company certain machinery, at the price of $3,775, of which $600 was paid in cash, and the mill company agreed to pay plaintiff's draft

for $813.42 upon the arrival of the machinery in the city of Muskogee; that plaintiff shipped the machinery on defendant's railway on the 6th of March, 1906, consigned to shipper's order, and at the same time drew a draft on the mill company for the $813.42, and attached it to the bill of lading given by the defendant for shipment of the machinery; and that by the terms of the consignment and contract the title to the property remained in plaintiff until the draft was paid; and that the defendant wrongfully delivered the machinery to the mill company without requirng payment of the draft or the producton of the bill of lading. Plaintiff further alleges that nothing has been paid upon the draft, except $130.81; that the mill company is insolvent, and refuses to pay for the machinery; and that the bill of lading is still in its possession. Plaintiff further states that the defendant wrongfully delivered to the mill company a certan panel raiser, belonging to it, and that it incurred expenses in recovering and repairing the same, which amounted to $43.

Plaintiff asks for judgment for $715.61 and interest and costs.

The defendant answered, and in effect specifically denied each allegation of the complaint.

"The answer further sets up that plaintiff ratified the delivery of the property to the mill company; that it permitted the mill company to use the same, and entered into a contract with the mill company under which the company was to retain the property and make weekly payments of $100 until the draft was paid. The answer further alleges that, by reason of the acts and conduct of plaintiff in dealing with the property after it was delivered to the mill company, it is estopped from recovering, even though the property had been wrongfully delivered; and, further, that subsequently the plaintiff had the property delivered back to it, and that it was not in any way damaged by the alleged wrongful delivery by the defendant."

Plaintiff sold to the defendant machinery at the price of $3,775, to be paid as follows: $600 in cash; $500 by three months' note; $500 by six months' note; $1,000 by nine months' note; $1,000 by twelve months' note, and the balance by an allowance of $175 on a second-hand machine. This agreement

was afterwards modified by mutual consent, requiring the mill company to pay, in addition to the cash payment, a draft for $500 on arrival of the machinery at Muskogee.

Subsequent to first sale, the mill company purchased of plaintiff other machinery, and agreed to pay therefor $313.42 in cash. All of the machinery was shipped on defendant's railway on the 6th of March, to plaintiff's order, to Muskogee, with draft for $813.42—the amount of the $500 to be paid in cash and the $313.42 for additional machinery—attached to the bill of lading given by the defendant for shipment of the machinery. Defendant delivered the machinery to the mill company on its arrival at Muskogee, without requiring payment of the draft or demanding the production of the bill of lading. In addition to the above mentioned machinery, plaintiff, on the 6th of March, 1905, shipped to the mill company a panel raiser, priced $108, which was wrongfully delivered by the defendant to the mill company, with the other machinery, but it was finally recovered and repaired by plaintiff at an expense of $43. Defendant has never offered to return the machinery, and plaintiff never expressly ratified the delivery to the mill company, but on the contrary refused to surrender the bill of lading until the draft was paid. The mill company proposed to pay $100 weekly in settlement of the draft, provided plaintiff would surrender the bill of lading and release the defendant, and in order to show its good faith accompanied its proposition with a check for $100, the first weekly payment. Plaintiff expressed a willingness to accept $100 weekly, but refused to surrender the bill of lading and release the defendant until the draft was paid in full, and the mill company made no other payment. Credits for $100 paid as before stated and $58.50 allowed for freight have been indorsed on the draft, but balance of $654.92 is still due and owing. Plaintiff still holds the bill of lading. Most of the machinery has been recovered, but in much damaged condition.

Plaintiff recovered judgment for $710.96; and the defendant appealed.

As the machinery was shipped to the order of appellee, with the draft attached, the appellant had no authority to deliver it to the mill company, except upon the production of the bill of lading properly indorsed by the shipper. *Arkansas Southern*

*Railway Company* v. *German National Bank,* 77 Ark. 482, 487. The delivery of the machinery without the payment of the draft o· the production of the bill of lading properly indorsed (the appellee not consenting) was a conversion, by which the appellant became liable to appellee for the value of the machinery. *Arkansas Southern Railway Company* v. *German National Bank,* 77 Ark. 482; *Jellett* v. *St. Paul, Minneapolis & Manitoba Railway Company,* 30 Minn. 265. The failure of appellee to endeavor to recover possession of the machinery did not relieve appellant of the liability; nor would it have been relieved if it had reclaimed the property and tendered it to appellee, but such tender could have been shown only in the mitigation of damages. 3 Hutchinson on Carriers (3 Ed.), § 1374; *Norman* v. *Rogers,* 29 Ark. 365; *Plummer* v. *Reeves,* 83 Ark. 10, 13. The actual return of the machinery to appellee would not have relieved appellant, if appellee's damages had exceeded its value. *Plummer* v. *Reeves,* 83 Ark. 10, 13; 28 Am. & Eng. Ency. of Law, (2nd Ed.), 683; and cases cited above. There was nothing shown in this case to bar the recovery of damages, if any.

There is no controversy in this court as to the measure of damages, if appellee was entitled to recover any.

The evidence was sufficient to sustain the verdict.

Judgment affirmed.