MIDLAND LINSEED COMPANY, Appellee, v. AMERICAN LIQUID
FIREPROOFING COMPANY et al., Appellees; CHICAGO
GREAT WESTERN RAILROAD COMPANY, Appellant.

**CARRIERS:** Delivery Without Bill—Subsequent Acquisition. A carrier·is absolved from all liability on the score of delivery by delivering a shipment without obtaining possession of the bill of lading, but subsequently acquiring the bill of lading from one who .had title to it.

**CARRIERS:** Unauthorized Delivery. A shipper who sends to a bank a bill of lading with draft attached, may not, as between himself and the carrier, claim that the act of the bank in delivering the bill of lading to the buyer was unauthorized. So held where the bank, erroneously supposing the draft to be paid, delivered the bill of lading to the buyer, and the buyer delivered the same to the carrier.

**CARRIERS:** Unauthorized Delivery—Ratification. A shipper who, with knowledge that a carrier had made an *unauthorized* delivery, treats the one to whom the delivery was made as his debtor, thereby ratifies the unauthorized delivery and necessarily precludes himself from proceeding against the carrier as for conversion. So held where the shipper retained partial payments made by the one to whom delivery was made, and later brought suit against said party to collect the balance.

**CARRIERS:** Non-Delivery—Form and Time of Making Claim. A provision in an interstate bill of lading requiring claims for non-delivery to be made (a) in writing, and (b) within a stated time, applies, in compliance with Federal court rulings, to a *misdelivery*.

**CARRIERS:** Form of Claim—Authority of Agent to Receive. A shipper, obligated by a bill of lading to make his claim for damages in a specified form, must show such authority in the person to whom the claim is made that it may be inferred that service on such person was service on the carrier. Certain indefinite evidence held insufficient to show such authority.

*Appeal from Cerro Gordo District Court.—J. J.* CLARK,
Judge.

MARCH 6, 1918.

REHEARING DENIED JUNE 24, 1918.

ON this appeal, the sole question is whether the defendant railroad is liable to the plaintiff company because of an alleged misdelivery of an interstate shipment entrusted by the plaintiff to said railroad company. The district court held the railroad was thus liable, and defendant appeals.— *Reversed and remanded.*

*Carr, Carr & Evans,* and *Blythe, Markley, Rule & Smith,* for appellant.

*Kelleher & O'Connor,* and *Cliggett & Smith,* for appellees.

SALINGER, J.—I. We need not consider whether it would help the plaintiff if its allegation that the defendants colluded were proved. There is absolutely no evidence of any collusion or bad faith.

The defendant Fire Proofing Company ordered a carload of oil of plaintiff. Plaintiff shipped the car over the defendant railroad, and consigned it to itself. At the same time, it sent the bill of lading to the defend-

1. CARRIERS: delivery without bill: subsequent acquisition.

ant bank, with draft for the amount of the purchase price attached. It was the duty of the bank not to surrender this bill of lading to the buyer except on payment of this sight draft. The carrier was authorized to deliver the oil to the buyer upon surrender of the bill of lading. It delivered before such surrender, but received the bill of lading later. The shipper was paid part of the purchase price; but, for present purposes, we will deal with the case as though no payment had been made to the seller.

All the authorities agree that, if a shipment is to be delivered only upon the surrender of the bill of lading, and the carrier delivers without obtaining such bill, the shipper

may, as to any loss resulting, treat the carrier as guilty of a conversion. 2 Hutchinson on Carriers (3d Ed.), Section 727; *Chicago & S. E. R. Co. v. Fifth Nat. Bank*, 26 Ind. App. 600 (59 N. E. 43). But no case holds that, if the carrier does obtain the bill of lading, he is guilty of conversion merely because he made delivery before he obtained the bill of lading. If the fact that delivery was made before the bill was surrendered were controlling, then, upon proof of such premature delivery, the seller could recover the purchase price of the carrier after the buyer had already paid. The liability of the carrier for conversion is not a penalty for premature delivery. He is liable because he delivered to one who was not, in truth, authorized to receive. The effect of a consignment by a shipper to himself, and sending bill of lading with draft attached to someone other than the carrier, is an agreement that obtaining the bill of lading from one entitled thereto shall conclusively acquit the carrier from liability to the shipper. The bill of lading is contract evidence of the right to deliver. The liability is for wrongful delivery, not for delay in obtaining evidence of rightful delivery. Had the bill been surrendered before the shipment was delivered, this would have been no protection to the carrier if the presentor had no right to the bill. Exactly that is the situation if presented after delivery. It is not the time of surrender, but the right to surrender, that matters.

While *Nebraska Meal Mills v. St. Louis, S. W. R. Co.*, 64 Ark. 169 (41 S. W. 810), upon which appellant greatly relies, turns off on the fact that the carrier knew nothing of a bill of lading with draft attached being out, the case does support the proposition that the test is not timely presentation of the bill, but whether delivery was made to one who was, under the contract of the parties, entitled to receive it. If the shipment be delivered before the bill is presented, the carrier takes his chance on whether the person

receiving the goods is entitled to them. He takes his chance on whether the bill of lading is genuine, or of a false impersonation. In one word, he takes his chance of rightfully obtaining the bill of lading. If he never gets it, or if he does and the person who surrenders it has no right to it, he must make good the loss of the seller. *Schlichting v. Chicago, R. I. & P. R. Co.*, 121 Iowa 502, 505, 506; *Forbes v. Boston & Lowell R. Co.*, 133 Mass. 154, at 157; *Foy v. Chicago, M. & St. P. R. Co.*, 63 Minn. 255 (65 N. W. 627); *Midland Valley R. Co. v. J. A. Fay & Egan Co.*, 89 Ark. 342 (116 S. W. 1171); *Pacific Exp. Co. v. Critzer*, (Tex.) 42 S. W. 1017; *American M. U. Exp. Co. v. Milk*, 73 Ill. 224; *Merchants & Miners Transp. Co. v. Moore & Co.*, 124 Ga. 482 (52 S. E. 802); *Ridgway Grain Co. v. Pennsylvania R. Co.*, 228 Pa. 641 (77 Atl. 1007). The bill *was* surrendered to the carrier, although it was done after it had delivered the oil. The controlling question is whether the buyer who surrendered it had, as between the carrier and the shipper, the right to surrender it. The shipper had created two agencies. The carrier was its agent to transport, and it was agreed that its possession of the bill of lading should be a voucher for authorized delivery. The bank was an agent, whose duty it was to make it impossible for the carrier to obtain the bill of lading until after the purchase price had been paid to the bank. If the carrier did not get the bill of lading because it had no right to receive it, it was liable for the purchase price. If the bank parted with the bill of lading, and thereby absolved the carrier from liability, the bank became liable for the purchase price, unless its principal in some way released it. Neither agent was liable to the principal for any loss caused solely by the default of the other agent. The bank surrendered the bill to the buyer. Had it thereafter paid the seller the amount of the draft, no one would

2. CARRIERS: unauthorized delivery.

be liable, though the carrier parted with the goods before the surrender of the bill.

What and who caused loss? It is only depriving one of property by an unauthorized act that constitutes conversion. *Kreher v. Mason,* 33 Mo. App. 297, citing Addison on Torts (6th Ed.), Section 525. To be sure, the bank has not paid the shipper. But does that make the delivery of the bill of lading to the buyer an unauthorized act, in such sense as that the carrier who delivered without presentation of the bill is responsible as for a conversion? The damage is not due to the fact that the bill was not presented before the goods were turned over, but because the bill was turned over by the bank, and the bank did not pay the draft. The vital question is whether the shipper is in position to say that delivery of the bill by the bank to the buyer was, as to the carrier, an unauthorized act. The bank only was responsible to the shipper if it voluntarily gave up the bill of lading without collecting the purchase price. *State Nat. Bank. v. Thomas Mfg. Co.,* 17 Tex. Civ. App. 214 (42 S. W. 1016). If the bank had been paid the actual cash by the buyer, the shipper could not claim anything of the carrier. But it was not thus paid. A large part of what the bank received from the buyer was the check of a third person, which both the depositor and the bank believed to be good. This check, later, went to protest. If the carrier is liable, it is because the bank accepted in payment a check which proved worthless. What the situation would be, had the carrier known that the bill was obtained by turning over said check therefor, we need not determine. It is not claimed it had any such knowledge. We think that, as between the carrier and the shipper, the transfer from the bank to the buyer gave the buyer title to the bill of lading; that the case is the same as if the bank had taken the note of the buyer, and the note had proved uncollectable.

The case stands precisely as if the buyer had deposited

the worthless check with the shipper himself, and the shipper had, thereupon, surrendered the bill of lading, or directed the carrier to deliver to the buyer; and it is determined by *Rathbun v. Citizens' Steamboat Co.*, 76 N. Y. 376, that, in such case, the carrier would not be liable to the shipper. And see *Dobbin v. Michigan Cent. R. Co.*, 56 Mich. 522 (23 N. W. 204) ; *National Bank of Phoenixville v. Philadelphia & R. R. Co.*, 163 Pa. 467 (30 Atl. 228). The carrier is not liable, because it obtained the bill of lading from one who had title thereto. That its surrender to the buyer made the bank liable to the seller, does not concern the carrier. That question lies wholly between the bank and its principal. Nor is it material that the trial court found in favor of the bank, and that the seller has fallen between two stools, and may not collect from the bank because no appeal was taken by the shipper from the decree in favor of the bank. It is not the fault of the carrier that the plaintiff has not appealed.

We hold that the carrier has the contract acquittance. It did obtain the bill of lading. The person who surrendered it had title to it, even though the bank had a cause of action against the presentor because of nonpayment of the check deposited to pay the purchase price, and though the shipper had a cause of action against the bank for its failure to remit the amount of the draft. We hold, also, that it is immaterial that the bill was not surrendered until after the shipment had been delivered, so long as it was surrendered at some time when the presentor had title to it; and that it is immaterial that, thereafter, the buyer obtained the bill from the carrier for some such purpose as showing it to the bank, and its physical possession was not thereafter restored to the carrier.

II. A considerable time after the draft had been sent, the shipper received and accepted a partial payment. If, at that time, it knew, or, by inquiries suggested from the cir-

cumstances, could have learned, that the

**3. CARRIERS: un-authorized delivery: ratification.** oil had already been delivered, this would clearly estop a recovery against the carrier. But there is evidence that the shipper supposed the partial payment to be one upon the draft, and that the goods had not yet been delivered. So we will assume that the receipt of this partial payment did not work a ratification. But after the plaintiff discovered that the oil had already been delivered, it retained this partial payment. It demanded payment of the balance of the purchase price from the buyer, and finally it sued it for that purchase price. Why does not this constitute a ratification in favor of the carrier, or, for that matter, against the bank? The suit against both carrier and bank is confessedly for conversion, which implies a claim that no title passed to the buyer. A demand for the purchase price implies there was a purchase, and, therefore, that the buyer obtained title. While inconsistent defenses may be pleaded, it is so because the statute so says. There is no authority for inconsistent claims in a petition, and their making operates as an estoppel. We hold the carrier cannot be made liable for conversion of the goods consisting of giving them to someone who was not entitled to them, where the plaintiff declares that the buyer owes him the purchase price. *Kearney Mill. & Elev. Co., v. Union P. R. Co.,* 97 Iowa 719. If the delivery was unauthorized, demand of the purchase price ratifies the unauthorized act. See *Nanson v. Jacob,* 93 Mo. 331 (6 S. W. 246); 1 Am. & Eng. Encyc. of Law (2d Ed.), 1196, 1209; *Eadie, Guilford & Co. v. Ashbaugh,* 44 Iowa 519; *Deering & Co. v. Grundy County Nat. Bank,* 81 Iowa 222; *Russ v. Hansen,* 119 Iowa 375. It does not matter that taking the contrary positions has worked no injury. *Kearney Mill. & Elev. Co. v. Union P. R. Co.,* 97 Iowa 719, at 724. We hold the plaintiff is estopped to assert that defendant railroad has converted the shipment.

III. A provision in the bill of lading is that claim for damages, including those for failure to make delivery, must be made in writing, and within four months after a reasonable time for delivery has elapsed; and un-

4. Carriers: non-delivery: form and time of making claim.

less claims are so made, the carrier shall not be liable. Such contracts are valid. *Georgia, F. & A. R. Co. v. Blish Milling Co.*, 241 U. S. 190 (36 Sup. Ct. Rep. 541); *Erisman v. Chicago, B. & Q. R. Co.*, 180 Iowa 759; 4 Elliott on Railroads, Sec. 1512. The plaintiff says, first, a provision covering failure to make delivery has no application to misdelivery; second, that it did make written claim within the time stipulated; third, that, if there was not strict compliance, strict compliance has been waived.

For the claim that the contract does not cover misde livery, it is said that misdelivery is a conversion, and that the contract does not cover conversions. It may be conceded that this position is supported by *Merchants & Miners Transp. Co. v. Moore & Co.*, 124 Ga. 482 (52 S. E. 802); *Cleveland, C. C. & St. L. R. Co., v. C. A. Potts & Co.*, 33 Ind. App. 564 (71 N. E. 685); and perhaps by other decisions. The reasoning in the *Moore* case indicates that a wilful act is referred to when speaking of conversion, and it may be doubted whether these cases have any application to anything but where the delivery is knowingly made to the wrong person. Be that as it may, this was an interstate shipment, and the construction of this contract is a Federal question, upon which the pronouncement of the Supreme Court of the United States controls. See *Georgia, F. & A. R. Co. v. Blish Milling Co.*, 241 U. S. 190 (36 Sup. Ct. Rep. 541). That case settles, not only that the construction of this provision is a Federal question, but also that it applies to misdeliveries. It is a case where delivery was made without payment of the draft and surrender of the bill of lading, though these were ultimately remitted to the shipper; and the

Federal decision is an "all fours" case. Among other things, it is said:

"It necessarily follows that the effect of the stipulation could not be escaped by the mere form of the action. The action is in trover, but, as the state court said, 'If we look beyond its technical denomination, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier.'"

See also, as giving some support, *Lee v. Coon Rapids Nat. Bank*, 166 Iowa 242; and *Richter & Sons v. American Exp. Co.*, 180 Iowa 1037.

### 3-a

It may be conceded that what was done constitutes a timely claim in writing. It was made to one who is said to be the commercial agent of the defendant railroad at the point where the shipment originates. The difficulty is that there is no competent evidence of what authority this man had. A written claim was addressed to "Commercial Agent, C. G. W. R. R., City." Further written communication was addressed to "Mr. Goodsell, Agent C. G. W. R. R., Minneapolis." A witness for the plaintiff testifies that the man written to was the commercial agent who solicited freight for the defendant road; that witness has settled "a little bit with him in the matter of adjusting claims and matters of that kind,—not a great deal;" that "quite frequently there were cases of claim adjustments coming up which I referred to him for verification of the price or verification of shipment or something like that, that came up and referred to us when they wanted to investigate our files, get information that the claim office asked for. Sometimes other agents of the company were sent by it to do that business, agents from the head claim office in Chicago." Further testimony is that this "commercial agent" had his office "with the ticket agent's office and the commercial office

5. CARRIERS: form of claim: authority of agent to receive.

for most all railroads." All this testimony was received over apt objection. The statement that the man written to was the agent of the defendant railroad is a pure conclusion, and is not receivable to prove that the addressee had powers which would make notice of this claim to him notice to the carrier. See *Heiman v. Felder,* 178 Iowa 740; *Georgia, F. & A. R. Co. v. Blish,* 241 U. S. 190 (36 Sup. Ct. Rep. 541). Neither is such authority shown by the fact that he had an office in the place where all the railroads had their ticket and commercial agents. That may be proof he was a commercial agent,—whatever that is,—but is no proof of what authority he possessed to act for the carrier in the premises. That he solicited freight and talked about claim adjustments would be competent proof of agency, if there were any evidence that the railroad authorized his doing so, or acted upon what he had done. In the last analysis, the proof of agency at this point is the acts and declarations of the alleged agent. We think the required claim was not made, because it is not shown it was made to the carrier. This situation relieves us from determining whether the intimation in the *Blish* case that such a claim must be made to a general officer is the law. It also relieves us from passing on the question whether the possibility of favoritism and rebating that would be created if there be the right to waive the provisions as to the manner of making claim, prohibits a waiver of such provision. And we need not pass upon whether, if the power to waive exists and Goodsell had it, what he did constitutes a waiver. See *Clegg v. St. Louis & S. F. R. Co.,* (C. C. A.) 203 Fed. 971.

Our conclusion is that the trial court erred in holding defendant railroad liable. The cause is remanded, with direction that judgment be entered in favor of the defendant Chicago Great Western Railroad Company, as between it and the plaintiff. The motion to dismiss appeal, made by de-

fendant First National Bank, is overruled.—*Reversed and remanded.*

PRESTON, C. J., LADD and GAYNOR, JJ., concur.