OMAN G. HARTMAN et al., Appellees, v. FRATERNAL BANKERS RESERVE SOCIETY, Appellant.

INSURANCE: Fraternal Benefit Associations—Collection of Premiums—Deposits in Bank. The power of the secretary of a local fraternal lodge to collect premiums for life insurance carries with it the power to make reasonable arrangements as to the method of receiving such premiums, and a payment to a clerk authorized by him would be a payment to him, and he could arrange with the bank that payments could be made to him there by a deposit to his credit.

INSURANCE: Fraternal Benefit Associations—Collection of Premiums—Unreasonable Requirements. Where the secretary of a fraternal lodge arranged with a bank that, as to premiums paid there to his credit by an insured, the bank should enter such payment on a receipt slip, placed in the pocket of a book furnished to the insured, and the tender of the premium was refused by the bank, wholly on the ground of failure to produce the book, which had been mislaid, the tender of the premium as made was good.

**INSURANCE:** Fraternal Benefit Associations—Collection of Premiums—Payment to Bank—Waiver of Rule to Produce Book. Where the secretary of a fraternal lodge had arranged that payments of premiums on insurance could be made by deposits of the same to his credit, upon production of a book for entries therein, and the bank refused a payment on the ground that the book, which had been mislaid, was not presented, the secretary's direction to receive the same waived the requirements of the production of the book for the evidencing of the payment.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

APRIL 14, 1919.

ACTION brought by the husband and daughter, beneficiaries of the insured, to recover on a benefit certificate issued by defendant on the life of the insured. Plaintiffs had judgment as prayed, and defendant appeals.—*Affirmed.*

*Shull, Gill, Sammis & Stilwill,* for appellant.

*George W. Kephart,* and *Kass Bros.,* for appellees.

SALINGER, J.—I. There is a considerable controversy over whether Ashley, the secretary of defendant's local lodge, had power to accept a premium from one who was suspended, knowing that the assured was then ill, and whether he had power, by acceptance of premium under those conditions, to work a reinstatement, and over whether Ashley had power to waive a default on part of the insured, and should be held to have done so. These questions are not for consideration until it be determined whether the insured was in default and needed reinstatement. If it may be held that insured effectively tendered all that was due, and in due time, then, whether sick or well at that time, she was never in default, never became suspended, and the question then becomes, not what the secretary, Ashley, had no power to do, but whether he had powers which effectuated that the tender in question was duly made, and in due time. Unquestionably, he had the power to receive the payment of

dues and assessments made in due time.   In other words, a payment to him in time of all that was due the defendant would make the defendant liable, even if Ashley received the payment at a time when he knew the insured was sick.   It remains to consider what the record shows without dispute as to tender made.

Ashley arranged with a bank that payment by those who were not in default might be made to him by depositing the same in that bank.   Unquestionably, the power to collect such premiums carries with it the power to make reasonable arrangements as to the mere method of receiving such payments.   He could hire a clerk to receive and record such payments, and payment to the clerk would be payment to him.   He could arrange with the bank that payments to him should be there deposited to his credit.   The assured offered all that was due, and offered it in time, and made that offer to the bank designated by Ashley.   The tender was declined.   Ashley was communicated with by telephone, he was told that the tender was declined, and told the bank to receive it.   The only conflict is whether, in this telephone message, he was or was not advised that, when the last of two tenders was made, the assured had become ill.   But that is immaterial, if the tender was good.   An insured who pays his premiums in time cannot be defeated because he is then or thereafter becomes sick and dies.   What, then, is the avoidance?   After the arrangement of paying at this bank had been in operation, Ashley arranged with the bank that thereafter, as to payments made to the bank rather than to Ashley personally, the bank should enter such payment on a receipt slip placed in a pocket of a little book furnished to the insured.   When the tender in question was made, the book in question had been mislaid by the assured.   The ten-

1. INSURANCE: fraternal benefit associations: collection of premiums: deposits in bank.

2. INSURANCE: fraternal benefit associations: collection of premiums: unreasonable requirements.

der was refused wholly on the ground of the nonproduction of this book. If there had been an advance agreement that the assured should be bound by subsequently enacted by-laws, and the defendant had enacted a by-law that all payments should be ineffectual unless they were entered on a slip found in the pocket of such a book, such a by-law would be condemned for being unreasonable. Suppose Ashley had declared he would give no receipts for assessments and dues except upon a special blank printed for him in London, and the sum due was offered him on the last day for payment. Could the policy be avoided because, on that day, he was out of these blanks, and would be unable to get them for a week thereafter? Suppose Ashley had directed this bank to receive no premiums unless paid in by the insured in person. If the assured was lying in bed with two broken legs, could her certificate be avoided because she sent the money due by a messenger? Could payment of the certificate be avoided because of a failure to observe a requirement that proofs of loss must be made on yellow paper of a prescribed quality? Suppose the bank had taken the money tendered, and acknowledged its receipt on a piece of letter paper, would the certificate be avoided by that fact, where the insured was unable to produce the book and the receipts in the pocket thereof? So to hold would be to put what is merely the evidence of a fact above the fact itself. In *Midland Linseed Co. v. American L. F. Co.*, 183 Iowa 1046, there was an attempt to charge a carrier with conversion, because it had delivered a shipment without production of the bill of lading; and this, though it obtained the bill after the delivery had been made. We held that the production of the bill of lading was no more than evidence that the carrier was authorized to deliver, and that delivery before receiving evidence of such authority would not make the carrier guilty of conversion. In principle, it seems to us that this pronouncement governs this case.

But suppose the bank had no original authority to receive the money unless this book was produced. Appellant does not contend that Ashley transgressed his powers by directing the bank to give receipts in blanks placed in this book. He had permitted the bank to receive payments without the production of this book and its receipt blanks. Even as he could prescribe this method, he could abrogate it. Whatever else, then, may fail, when Ashley was advised that the insured was unable to produce the book, and that the bank was declining to receive payment for that reason, his direction that the bank receive the payment certainly waived this requirement of Ashley's as to the method of evidencing payments made at the bank.

3. INSURANCE: fraternal benefit associations: collection of premiums: payment to bank: waiver of rule to produce book.

In plain English, defendant wishes us to reverse the trial court for allowing a recovery on this certificate, although full payment was offered in due time, because a particular style of evidencing the receipt of this money could not be followed, on account of the fact that the book was lost by the insured.

We are profoundly impressed there is little room here for either argument or citation. We hold there was a sufficient tender made in due time, and that the certificate never lapsed. As said, this obviates any necessity for considering any of the other matters urged in the briefs. We are of opinion that the judgment of the district court must be—*Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.