ADEL PRECISION PRODUCTS CORPORATION *v.* GRAND TRUNK WESTERN RAILROAD COMPANY.

1. CARRIERS—ORDER BILL OF LADING—INDORSEMENT—DELIVERY.
   An unauthorized typewritten indorsement of order bill of lading was not a proper indorsement authorizing delivery of interstate shipment by carrier to possessor of the bill of lading (49 USCA, §§ 88, 89).

2. SAME—BILL OF LADING—INDORSEMENT—MISDELIVERY.
   Evidence supported trial court submitting to jury and its finding that original bill of lading had not been properly indorsed and that defendant had misdelivered interstate shipment of farm machinery to possessor of order bill of lading (49 USCA, §§ 88, 89).

3. SAME—BILL OF LADING—INDORSEMENT—DELIVERY—STATUTES.
   Carrier's delivery of interstate shipment to possessor of order bill of lading which had not been properly indorsed was not authorized by the Federal bill of lading act (49 USCA, §§ 88, 89).

4. SAME—MISDELIVERY—RATIFICATION.
   An attempt by one who has sustained a loss on account of wrongful delivery to collect from the recipient of the goods their price or value is not, as a matter of law, ratification of the delivery by the carrier.

---

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 9 Am Jur, Carriers §§ 436, 437.
[3] 9 Am Jur, Carriers § 554.
[3] Delivery by carrier to impostor. 54 ALR 1330.
[4] 9 Am Jur, Carriers § 557.
[5] 9 Am Jur, Carriers § 568.

5. SAME—MISTAKE—ORDER BILL OF LADING—INDORSEMENT—MISDE-
LIVERY—NEGLIGENCE—EVIDENCE.

> Whether or not the mistaken forwarding of the original of an
> unindorsed order bill of lading to order of consignor to pur-
> chaser without notifying such purchaser of the error and to
> return the bill of lading or taking other steps to prevent de-
> livery by carrier upon forged indorsement constituted negli-
> gence on part of consignor precluding recovery of value of the
> shipment from the carrier who misdelivered the shipment to
> the purchaser under bill of lading which had been indorsed
> without authorization by consignor was properly left as question
> for the jury under evidence adduced (49 USCA, §§ 88, 89).

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted January 16, 1952. (Docket No. 6, Calendar
No. 45,243.) Decided March 6, 1952. Rehearing
denied May 16, 1952.

Action by Adel Precision Products Corporation
against Grand Trunk Western Railroad Company
for value of property delivered to Hickman Farm
Supplies. Verdict and judgment for plaintiff. De-
fendant appeals. Affirmed.

*Foster, Cummins, Snyder & Foster,* for plaintiff.

*Ballard, Jennings, Bishop & Fraser* (*H. V. Spike*
and *F. V. Slocum,* of counsel), for defendant.

REID, J. Plaintiff brought suit to recover for
value of a shipment consisting of a carload of farm
machinery shipped upon an order bill of lading,
claimed to have been misdelivered by defendant rail-
road to Hickman Farm Supplies, Inc. (hereinafter
called Hickman), at Lansing, Michigan. Defend-
ant claims a justified delivery, but claims that if it
is found that the delivery was not justified, that
plaintiff ratified the delivery. The jury rendered a
verdict for plaintiff for the value of the shipment.
Plaintiff had judgment on the verdict. Defendant
appeals. No error is assigned on instructions to the

jury and the instructions are not in the record. Defendant relies, for reversal, upon claimed errors in denial of its motion for a directed verdict made at the conclusion of plaintiff's proofs, also on denial of the same motion renewed at the conclusion of all the proofs, and denial of the later motion for a judgment notwithstanding the verdict.

Plaintiff in July, 1948, sold a carload of farm machinery to Hickman, which machinery was for the most part manufactured by Newkirk Manufacturing Company (hereinafter called Newkirk) at Anaheim, California. The manner of the shipment was directed on the part of plaintiff from plaintiff's home office at Burbank, California. The shipment was by plaintiff's direction made by Newkirk from Anaheim, California, direct to order of plaintiff in Lansing, Michigan.

The questions involved are stated by defendant in its brief as follows:

1. Was the defendant justified as a matter of law under the Federal bill of lading act in delivering the merchandise to Hickman upon the surrendering [by Hickman] to the defendant of possession of the bill of lading? If this Court should affirm the lower court's answer [no] to question 1., then,

2. Under the undisputed evidence in this case, did the plaintiff ratify the delivery of said shipment to Hickman?

Walter Noon, a witness for plaintiff, testified that he was employed by Newkirk in July, 1948, as engineer and draftsman; that the shipping clerk, Mr. McMasters, was ill, and that he, Noon, was performing McMasters' duties, and that he had instructions from plaintiff about making up the shipment in question, which instructions were that he, Noon, was to make out a sight draft order bill of lading with 1 original and 3 copies; that he was to mail the original and 1 copy to plaintiff at Burbank, California;

that 1 copy was to be retained by the railroad, and 1 copy was to be retained by Newkirk, Noon's employer.

Noon testified that he prepared exhibit No 7, entitled "uniform order bill of lading" with 3 copies thereof, that he took the original, exhibit No 7, and all 3 copies to the railroad clerk for the Southern Pacific, the common carrier originally receiving the shipment, for his signature. Noon further testified that by mistake he mailed the original, exhibit No 7, to Hickman, that at that time there was no indorsement on exhibit No 7 and particularly that the indorsement appearing on the original, exhibit No 7, at the time of the trial, "Adel Prec. Prod. Corp." in typewriting, was not on the exhibit when he mailed it to Hickman. Noon further testified that among other things, "consigned to order of Adel Prec. Prod. Corp." was on exhibit No 7 when he, Noon, mailed it to Hickman. There is no contradiction of Noon's testimony.

There was no testimony that the indorsement, "Adel Prec. Prod. Corp." in typewriting was on the original when the original was received by Hickman. The original bill of lading contained the following, "Notify Hickman Farm Supplies Inc. corner Grand River & DeWitt Rd. at Lansing, State of Michigan."

Alton Graeff, general manager of Hickman, testified that he signed "Hickman Farm Supp. Inc.," and his own name underneath that of his company under the typewritten "Adel Prec. Prod. Corp." indorsement, before exhibit No 7 was delivered to defendant.

The answer of defendant admits the delivery of the goods to Hickman.

Francis B. Courtney, handwriting expert and expert on typewritings, testified that the disputed typewritten indorsement in question was made by a Royal typewriter machine, and in that particular

is different from the other typewritten matter contained in exhibit No 7, and also different from specimens of typewritings exhibited to the witness from typewriting machines in the office of Hickman and of the defendant.

Witness Noon testified that there was no Royal typewriting machine in the office of Newkirk in July and August, 1948. It does not clearly appear whether there was any Royal machine in the office of Hickman.

Efforts were made by plaintiff by correspondence to get payment from Hickman for the shipment, but Hickman refused to make payment, unless plaintiff would take off Hickman's hands, certain machinery purchased by Hickman from plaintiff, found unsalable in Michigan. Plaintiff refused to take back the unsalable goods, and brought the instant suit against defendant, and did not sue Hickman.

Under its claim that the delivery was justified, defendant cites the provisions of section 8 of the Federal bill of lading act (49 USCA, § 88), as follows:

"A carrier, in the absence of some lawful excuse, is bound to deliver goods upon a demand made either by the consignee named in the bill for the goods or, if the bill is an order bill, by the holder thereof, if such a demand is accompanied by—

"(a) An offer in good faith to satisfy the carrier's lawful lien upon the goods;

"(b) Possession of the bill of lading and an offer in good faith to surrender, *properly indorsed.* the bill which was issued for the goods, if the bill is an order bill; and

"(c) A readiness and willingness to sign, when the goods are delivered, an acknowledgment that they have been delivered, if such signature is requested by the carrier." (Italics supplied.)

Also, section 9 of the act (49 USCA, § 89):

"A carrier is justified, subject to the provisions of §§ 90–92 of this title, in delivering goods to one who is—

"(a) A person lawfully entitled to the possession of the goods, or

"(b) The consignee named in a straight bill for the goods, or

"(c) A person in possession of an order bill for the goods, by the terms of which the *goods are deliverable to his order;* or which has been indorsed to him, or in blank by the consignee, or by the mediate or immediate indorsee of the consignee." (Italics supplied.)

Under the order bill of lading in the instant case, exhibit No 7, the goods were consigned to the order of *plaintiff* at Lansing.

There was no proper indorsement on the order bill of lading, according to undisputed testimony, because the typewritten indorsement is clearly shown to have been unauthorized.

Defendant cites *Pere Marquette R. Co.* v. *J. F. French & Company,* 254 US 538 (41 S Ct 195, 65 L ed 391), and particularly seems to rely upon the words, "The real cause of the loss was the wrongful surrender of the bill of lading by the Indianapolis bank to Marshall & Kelsey, by means of which the car was taken to Camp Zachary Taylor and the shipper deprived of the Louisville market," on page 547; but defendant overlooks the following words on page 545, "Concluding, therefore, that there was a delivery, that it was made to a person in possession of the bill of lading, *properly indorsed,* and that it was made in good faith, the important question remains: Does such a delivery exonerate the carrier upon suit by the shipper when it failed to require surrender of the bill of lading as provided in that instrument?" (Italics supplied.)

The *Pere Marquette Case, supra,* is to be differentiated from the instant case because of the dissimilarity of the facts in the *Pere Marquette Case* from the facts in the instant case. In the *Pere Marquette Case,* the bill of lading was properly indorsed, while in the instant case, the bill of lading under the finding by the jury, was not properly indorsed, and the ground on which the court in the *Pere Marquette Case* exonerated the common carrier, was different from the ground which the defendant in the instant case claims as a basis for exoneration.

Exhibit No 7 is on a blank form, "uniform order bill of lading," and contains the statement, "The surrender of this original order bill of lading *properly indorsed* shall be required before the delivery of the property." (Italics supplied.)

The opinion of the trial court upon the motion of defendant for judgment notwithstanding the verdict indicates that there had been submitted to the jury (among other things) the questions of whether there was misdelivery and the question whether the original bill of lading was properly indorsed, both of which questions were evidently resolved by the jury in favor of the plaintiff, as to which questions we find there was a sufficient foundation in the testimony for the verdict. We overrule defendant's contention that in those last recited particulars there was reversible error as a matter of law.

The Federal bill of lading act did not authorize defendant, under the circumstances of this case, to deliver to Hickman the goods in question.

Defendant claims and plaintiff denies that plaintiff ratified the delivery after it was made. Defendant cites an Iowa case of *Midland Linseed Co.* v. *American Liquid Fireproofing Co.,* 183 Iowa 1046 (166 NW 573), in which a railroad company as a common carrier is joined as a defendant. Plaintiff in the *Iowa Case* claimed a misdelivery of goods by

the railroad company; in that case the plaintiff had sued the wrongful recipient of the goods. The Iowa supreme court said (p 1049):

"The bill was surrendered to the carrier, although it was done after it had delivered the oil.  *  *  * After the plaintiff discovered that the oil had already beèn delivered, it retained this partial payment [from the buyer, the wrongful recipient]. It demanded payment of the balance of the purchase price from the buyer, and finally it sued it for that purchase price. Why does not this constitute a ratification in favor of the carrier, or, for that matter, against [for?] the bank? The suit against both carrier and bank is confessedly for conversion, which implies a claim that no title passed to the buyer. A demand for the purchase price implies there was a purchase, and therefore that the buyer obtained title.  *  *  * We hold the carrier cannot be made liable for conversion of the goods, consisting of giving them to someone who was not entitled to them, where the plaintiff declares that the buyer owes him the purchase price.  *  *  * If the delivery was unauthorized, demand of the purchase price ratifies the unauthorized act."

In a footnote in 15 ALR2d 813, 814, comment is made on the Iowa case as follows:

"In *Midland Linseed Co.* v. *American Liquid Fireproofing Co.* (1918), 183 Iowa 1046 (166 NW 573), the general principle was stated that 'if the delivery was unauthorized, demand of the purchase price ratifies the unauthorized act.' However, this broad principle is not supported by the facts of the case. It appears from the facts that the shipper accepted part payment of the price of the goods prior to the wrongful delivery, that he retained this partial payment after he had discovered the wrongful delivery, and demanded, and sued for, payment of the balance of the purchase price."

The facts in the *Midland Linseed Co. Case* (the Iowa case) are materially dissimilar to the facts in the instant case and an important statement of law in that case is contrary to the weight of authority as stated in 15 ALR2d 813, § 7, which recites,

"It appears from the cases collected herein that a mere attempt by one who has sustained a loss on account of wrongful delivery to collect from the recipient of the goods their *price* or *value* is not, as a matter of law, ratification of the delivery." (Italics supplied.)

We conclude that so far as it goes, this statement in ALR is a fair statement of the weight of authority.

The offer of plaintiff to Hickman to treat the matter of the misdelivered goods as an open account with Hickman, was by the latter entirely rejected, and plaintiff thereupon proceeded to the present suit as we have heretofore seen.

It was proper for the trial court to submit to the jury the question of whether plaintiff had ratified the misdelivery. The jury's determination in favor of plaintiff's claim that it was not plaintiff's intention to ratify the misdelivery, is fairly supported by the testimony, and the trial court was not in error in submitting that question to the jury and accepting its verdict thereon. The submission of that question to the jury is indicated in the court's opinion heretofore referred to.

It is the further claim of defendant that in making the shipment, Newkirk was plaintiff's agent, and that plaintiff should have promptly notified defendant of the mistake of Newkirk's clerk in forwarding the order bill of lading to the buyer, Hickman. On this point, witness Noon testified as follows:

"I later discovered the error, approximately that same afternoon.

"*Q.* What did you do, if anything, or what was done, if anything, if you know?

"*A.* Well, I notified Mr. Newkirk immediately of the error.

"*Q.* Who is Mr. Newkirk? Is he connected with your company?

"*A.* He is the president of the company.

"*Q.* And do you know whether he took any action or not?

"*A.* Yes, sir. He called the railroad. I know that."

This testimony does not support the proposition that notice was given the original carrier. The witness fails to relate what was said to "the railroad."

However, Willard Allen, credit manager of plaintiff, testified as follows:

"Knowing that the bill of lading could not be used without an indorsement on it, I assumed that the bill of lading would come back from our customer for indorsement, so I just let the situation ride along. I didn't do anything to find out who the delivering carrier would be so I could wire that carrier not to deliver it. I didn't immediately notify Hickman Company that an error had been made in sending the bill of lading direct to them. I made no special investigation to see if there had been any arrangements made for an open account at that time with the Hickman Company. I just trusted to the fact that the bill of lading would come back to me and then I would take care of the situation."

Would a prudent businessman in witness Allen's position be obliged to assume that there was any likelihood, or anything but a very remote danger, that the order bill of lading sent unindorsed through error to Hickman, a reputable going concern, would be presented by Hickman to defendant with a forged indorsement?

Whether plaintiff was negligent in not taking steps to prevent defendant being defrauded by a forgery of plaintiff's name as an indorsement on the bill of lading, could be considered as a question for the jury; and the jury seems (as we infer from statements in the opinion of the trial judge on denying the motion for judgment notwithstanding the verdict) to have passed on the question of plaintiff's negligence and decided it in favor of plaintiff. We cannot say that such decision finds no sufficient support in the testimony.

"Delivery of carload of grapes by carrier to consignee without shipper's indorsement upon bill of lading, in direct violation of its terms, amounted to conversion, and rendered carrier liable for value of grapes." *Keystone Grape Co.* v. *Hustis* [receiver of Boston & Maine RR Co.], 232 Mass 162 (122 NE 269) (syllabus 1, 122 NE).

Judgment for plaintiff affirmed. Costs to plaintiff.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.